# DISTRICT OF COLUMBIA

## *v.*

## BURGDORF.

CERTIORARI; TAXES; SPECIAL ASSESSMENTS; NOTICE.

1. The scope and effect of the writ of *certiorari* considered and defined.

2. Under the act of Congress of June 17, 1890, the Commissioners of this District have unconditional and unrestricted authority to determine the question of the propriety and necessity of laying water mains and water pipes and of erecting fire plugs and hydrants in Washington without respect to petitions or applications of property owners; but a special assessment for any of such purposes is invalid unless, in strict compliance with the act of the Legislative Assembly of June 23, 1873, the property owner is given such notice of the assessment by the water registrar as that act provides for.

3. The rate of taxation for water mains and fire plugs, one and a quarter cents per square foot on adjoining lots, fixed by the act of the Legislative Assembly of June 23, 1873, is a legislative valuation of the special benefits to the property which is not subject to judicial review.

4. A notice of the levy of a special assessment tax required by statute to be given property owners within a prescribed time after the work of special improvement has been done, is a sufficient notice to support such a tax; *distinguishing* Allman *v.* District of Columbia, 3 App. D. C. 8.

No. 450.   Submitted May 10, 1895.   Decided June 4, 1895.

HEARING on an appeal by the District of Columbia from a judgment entered on the return of a writ of *certiorari* quashing and vacating certain proceedings taken for the purpose of assessing a water main tax.   *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. S. T. Thomas,* Attorney for the District of Columbia, and *Mr. A. B. Duvall,* Assistant Attorney, for the appellant:

VOL. 6                    30

The authorities are uniform that power to levy a tax may be implied. 2 Dill. Mun. Corp. 741 and cases cited. The acts of Congress of June 10, 1879, and June 17, 1890, by necessary implication substituted the Commissioners for the water registrar in the matter of making water main assessments. Congress had the act of the Legislative Assembly before it when it imposed these duties and powers upon the Commissioners ; it took them away from the mere subordinate officials of the new government. Both of these acts of Congress were passed *after* the case of *Bensinger* v. *District,* 6 Mackey, 288, and that case cannot throw any light upon the present controverted question.

The act of the Legislative Assembly of June 23, 1873, by virtue of which the assessments were made, is not invalid because it does not provide for notice to the owner of the property, or give him an opportunity to be heard as to the rate of assessments, cost of work, &c. Water main tax assessments stand on an entirely different basis from assessments made under the so-called compulsory and permit system, which were the subject of review in this court in the case of *Allman* v. *District,* 3 App. D. C. 8. The compulsory permit cases involved the question whether the several acts of Congress under which work had been done were constitutional, because they did not provide for notice prior to the assessment, or, indeed, thereafter, but it will be seen upon examination of that case, at the conclusion of the opinion, that the court was careful to say : "What has been said herein in respect to notice and hearing as essential requisites to the validity of the tax, *must be understood as to the character of the tax involved in this case and to no other.*" There is a marked distinction between assessments under review in that case and the assessment presented for review in this case. This distinction is recognized in *Hagar* v. *Reclamation District,* 111 U. S. 701, which involved the validity of swamp land assessments.

Section 203 of the Revised Statutes of the District provides : "The water tax authorized to be collected and levied

and collected by the provisions of the four preceding sections shall constitute a fund to be used exclusively to defray the cost of distribution of the water, including all necessary fixtures and machines connected with such distribution." The preceding section, 199, authorizes a specific charge on particular property, which is determined by the legislature to be benefited by reason of the laying of the water main. Notice to property owners of the laying of the water mains was therefore of no possible service to them. The matter to be determined was a plain mathematical calculation.

Where no discretion is left to municipal officers, notice is not essential to the validity of the levy of water main tax assessments. 25 Am. & Eng. Ency. 546, note 1 and cases.

Whenever a local improvement is authorized, it is for the legislature to prescribe the way in which and the means by which its cost shall be raised, whether by laying general taxes or by laying the burden upon the land especially benefited by the expenditure. *Mobile* v. *Kimball*, 106 U. S. 691–704; *Louisiana* v. *Pillsbury*, 102 U. S. 278–295.

The legislature has the power to determine by ordinance imposing the tax what lands which may be benefited by the improvement are, in fact, benefited; and if it does, its determination is conclusive upon the owners, and the owners have no right to be heard upon the question whether their lands are benefited or not. *Spencer* v. *Merchant*, 125 U. S. 345–353.

The water main tax assessments in question were not levied in the exercise of eminent domain, but in the exercise of the taxing power of the municipality, and notice was not required. *Baltimore* v. *Johns Hopkins Hospital*, 56 Md. 1; *Alberger* v. *Baltimore*, 65 Md. 1. The cost of laying water mains being fixed by statute at a cent and a quarter per superficial foot against abutting property, the entire matter was ministerial.

The benefits in the case of water main taxes are purely local, as the use of the water must necessarily be mostly restricted to the benefit of the property abutting the street

or avenue in which the mains are laid, both for domestic purposes and the extinguishment of fires. The effect of supplying the streets and avenues of the city with water is to enhance the value of dwelling houses thereon, of which the maintenance of the water mains and the supplying of water are necessarily a continuing expense, and fully justifies the imposition of the taxes assailed in this case. *Allentown* v. *Henry*, 73 Pa. St. 404, 406; *Allen* v. *Drew*, 44 Vt. 174, 187.

The right to levy special assessments for local improvements in this District has been settled by the Supreme Court. *Willard* v. *Presbury*, 14 Wall. 676.

Whether the particular proprietor has been benefited by public improvements cannot be reviewed by *certiorari* except for errors of law. *People* v. *Gilom*, 126 N. Y. 147.

*Messrs. A. A. & T. W. Birney* for the appellee:

1. The right of a citizen to his property requires that the authority for an assessment should be strictly construed. *White* v. *Saginaw*, 67 Mich. 40; *Allman* v. *District of Columbia*, 3 App. D. C. 8.

The question of notice is settled in this jurisdiction. *Allman* v. *District of Columbia, supra.*

In any case where proceedings are to be had for the taking of property, or to impose a burden upon it, the *statute itself* must provide for notice to the property owner; otherwise it is unconstitutional. *Garvin* v. *Daussman*, 114 Ind. 429; *Jackson* v. *State*, 104 Ind. 516; *Johnson* v. *Lewis*, 115 Ind. 490; *Kuntz* v. *Sumpters*, 17 Ind. 3; Lewis on Em. Dom., sec. 368; Welty on Assessments, 286; *Gatch* v. *Des Moines*, 18 N. W. Rep. 310.

2. Assessments for local improvements can be justified only upon the theory that the lands upon which they are laid are specially benefited; and if a law should authorize such assessments to be laid without regard to benefits, it would either take property for the public without compen-

sation, or take property from one person for the benefit of another; and in either aspect it would be unconstitutional. *Stuart* v. *Palmer*, 74 N. Y. 189; *Dyar* v. *Farmington*, 70 Me. 527; *State* v. *Cunningham*, 29 Minn. 62; *Johnson* v. *City*, 40 Wis. 315; *Chamberlin* v. *City*, 34 Ohio St. 551; *Wewell* v. *City*, 45 Ohio St. 424; *Schumacker* v. *Toberman*, 56 Cal. 510. Special benefits are those which exceed the general benefit to the public. *Mittell* v. *City*, 9 Ill. App. 534. Not only should the assessment be made in proportion to benefits received, but the record itself should show this fact; and it should further appear of record that the benefits will equal the cost of the work. *Adams* v. *City*, 78 Mich. 211; *Passaic* v. *Railroad*, 37 N. J. L. 538; *White* v. *Saginaw*, 67 Mich. 41. An assessment according to the superficial area of the lot, without regard to actual or probable benefits, or whether the lots were in the city or not, or whether they are contiguous or not, is unconstitutional. *Thomas* v. *Gain*, 35 Mich. 155.

The case of *Spencer* v. *Merchant*, 125 U. S. 345, relied on by appellant, is cited and construed in *Palmer* v. *McMahon*, 133 U. S. 660, where the court says: "The power to tax belongs exclusively to the legislative branch of the Government, and when the law provides for a mode of confirming or contesting the charge imposed, with such notice to the person as is appropriate to the nature of the case, the assessment can not be said to deprive the owner of his property without due process of law." See also *Davidson* v. *New Orleans*, 96 U. S. 104; *Hagar* v. *Reclamation Dist.*, 111 U. S. 711. No method is provided in the statute in question here for contesting or affirming the charge imposed. And that the legislature is the sole judge of whether or not property assessed is benefited, and that its conclusion is not reviewable by the courts, is by no means conceded by the authorities. Elliott on Roads and Streets, p. 397; *Barber Co.* v. *Edgerton*, 125 Ind. 465. The opinion of the legislature is never conclusive upon the question of benefits to the property assessed. *Coal Co.* v. *Coal Co.*, 37

Md. 560; *Cemetery Assn.,* 66 N. Y. 569; *Ryerson* v.
*Brown,* 35 Mich. 333; *Tyler* v. *Beacher,* 44 Vt. 648; *All-
man* v. *District of Columbia, supra.*

The Court of Appeals of Maryland has thoroughly con-
sidered this question, and after holding for many years, and
embodying in its decisions, the erroneous doctrine contended
for in this case by the District of Columbia, it has finally re-
turned to the true principle involved, and overruled its
former adjudications which controverted it.    See *Ullman* v.
*Mayor,* 72 Md. 587.

3.  In addition to the foregoing authorities requiring due
notice to be given to the person assessed, we find in the very
act relied upon by the District of Columbia as conferring
authority to lay water mains and assess for the same, without
notice, the following:   " And be it further enacted, that
the Board of Public Works shall determine where water
mains are to be laid, *on petition therefor."*   Act of Legisla-
tive Assembly, June 23, 1873, sec. 8.   As the Commis-
sioners have succeeded to the powers of the Board of Pub-
lic Works, they are also liable to restrictions imposed on
the latter body.   There was no petition by Burgdorf that
the water mains here in question should be laid.

4.  The assessments imposed under the law of June 23,
1873, are illegal, because they were not assessed by the
water registrar, and authenticated by him as required by
the law.   *Bensinger* v. *District of Columbia,* 6 Mackey
285; Welty on Assessments, sec. 10; *Walker* v. *District of
Columbia,* 6 Mackey 356; *Great Falls Ice Co.* v. *District of
Columbia,* 19 D. C. 327.

Mr. Chief Justice ALVEY delivered the opinion of the
Court:

This appeal is from a judgment of the court below ren-
dered on the return of a writ of *certiorari,* whereby certain
proceedings taken for the purpose of assessing a water main
tax were quashed and vacated, upon the allegation of
illegality in the assessment of such tax.

The writ of *certiorari*, when issued in a case like the present, is somewhat in the nature of a writ of error ; though it is not a writ of right, but rests in the discretion of the court applied to for its issuance. Yet, after the writ has been granted, and the record certified in obedience to it, the questions arising upon that record must be determined according to the fixed rules of law, and their determination is reviewable on error by an appellate court. *Harris* v. *Barber*, 129 U. S. 366, 369. The writ, however, should never be granted except when required to effect substantial justice, nor in any case to give effect to mere technical objections, or to allow a party to avail himself of mere irregularities in the proceedings complained of. The writ only lies to inferior courts and officers exercising, or entitled to exercise, judicial or *quasi* judicial functions, and the proceedings to be reviewed must be judicial in their nature, and not ministerial or legislative, and where it is plainly alleged, and verified by affidavit, that there is material defect of jurisdiction in the proceedings of the special or inferior tribunal ; for the object of requiring the record to be brought into the superior court is to determine whether such inferior or special tribunal had jurisdiction, or had exceeded its jurisdiction, or had not proceeded according to the essential requirements of the law. *Ex parte Hayward*, 10 Pick. 358 ; *People* v. *Betts*, 55 N. Y. 600 ; *Harris* v. *Barber*, 129 U. S. 371. Within these limits the writ has been held allowable by many cases to correct illegalities in the levy of taxes and local assessments by assessors, commissioners or other officers entrusted with the execution of such duty. But courts have said that the writ should be allowed with great caution, to avoid producing delay and embarrassment in matters of public concern ; and it has been frequently refused on grounds of public convenience. *Weaver* v. *Devendorf*, 3 Denio, 117 ; *Gilkey* v. *Watertown*, 141 Mass. 317 ; *Worcester County* v. *Worcester*, 116 Mass. 193 ; *Sisson* v. *New Bedford*, 137 Mass. 255 ; *State* v. *Jersey City*, 35 N. J. 381 ; *Carroll* v. *Mayor*, 12 Ala. 173 ; *Royce* v.

*Jenney*, 50 Iowa, 676; *Le Roy* v. *The Mayor, &c.*, 20 Johns. 430.

The transcript of the record for the purposes of this appeal has been greatly abbreviated; but it has been agreed that certain facts are alleged in the petition for the writ, and that certain facts are disclosed or are apparent in the record produced on the return to the writ; and from the stipulation of counsel we are enabled to gather the following as the state of the record:

In the petition it is alleged that the appellee, Augustus Burgdorf, is owner of certain real estate in Washington City, consisting of one entire square, and parts of several other squares, all mentioned by numbers of the lots and sub-lots, in the petition. That against each of these parcels of land there is, as alleged, borne on the tax records in the custody of the respondent, certain illegal charges, all but one of which purport to be assessments for cost of laying water mains, or of water main tax, made by the Commissioners of the District of Columbia, under the supposed authority of one or more of the following statutes, viz.: Act of the Legislative Assembly of the District of Columbia, approved June 23, 1873; act of Congress of June 10, 1879; act of Congress of June 17, 1890. It is alleged that the assessments are illegal, on the following grounds, as shown by the record:

1. Because the owners of the property along the line of the water mains in respect to which the assessments were made, including the appellee, never requested the improvement or authorized it, and they had no notice of the work to be done, or of the proposed assessments, until after the work was finished; and said owners had no opportunity to be heard as to the nature or cost of the improvement, or of the apportionment of the tax.

2. That the statutes referred to are unconstitutional and void, because they do not require the assessments to be made upon the basis of benefits to the property assessed.

3. Because the assessments were made without regard to the cost of the work or the value of the improvements.

4. Because the assessments made under the act of the Legislative Assembly of June 23, 1873, were not made or authenticated by the water registrar, as required by the statute.

5. Because the alleged assessments were not made by the Commissioners of the District, nor by any person authorized to make them.

6. Because the act of Congress of June 17, 1890, under which some of the assessments were made, does not authorize any assessment whatever, as for benefits to adjoining property, for the cost of the improvements contemplated.

7. Because the descriptions of the parcels of land assessed are insufficient.

It is also agreed that the charges or assessments are unpaid, and that the appellee had no appeal.

It is further agreed, that as to the lots of the appellee in squares 83, 669, 1001, 1030, 1074 and 1097, the record shows no order of the Commissioners that the work be done.

It is also further agreed that the water mains for which appellee's lots in squares 368, 616, 670 and 672 were assessed, were specifically ordered by the Commissioners to be laid under the act of Congress of June 17, 1890, and that the water main in square 671 was ordered to be laid in June, 1892, without specifying under what act the work was to be done. That as to none of the lots mentioned in the petition for the writ is there any record showing an assessment or authentication by the water registrar of the District.

The respondent to the writ relies entirely upon the following proceedings to support the validity of the assessments :

1. A communication to the Commissioners of the District, signed by the chief clerk of the water department, submitting for approval an assessment in an aggregate sum for laying water mains on certain streets, between certain other streets, and making no statement as to size of main

laid or cost of same, or dimensions or area of abutting property.

2. A tabulated statement headed " Water Main Assessment," not signed, but showing number and square of lot assessed, name of owner and amount of assessment, but no dimensions or area of lot.

3. To this communication and tabulated statement is appended the following certificate :

" OFFICE OF THE COMMISSIONERS,

" DISTRICT OF COLUMBIA,

" WASHINGTON, D. C. (properly dated) 18—.

" We hereby certify that the foregoing assessment is for water main authorized by law and laid by us ; that it is levied on property abutting upon said water main, and is based upon the legal rate of one and one-quarter cents per square foot." Signed by the Commissioners.

It is agreed that the main in square 670 was laid at a cost of $923.83, and that the appellee was assessed for the same, as the owner of said square, the sum of $1,179.42. That in the return of the respondent the cost of improvement opposite each of appellee's other lots is not separately shown, the cost being shown only in the aggregate between certain streets, and the number of linear feet of water main not appearing. That in no case does the record show any notice of the proposed improvement given to appellee or to the other owners of abutting property, until after the work was done and assessment made.

We shall not examine and determine as to the sufficiency of all the several grounds of invalidity assigned against the assessment ; but we shall consider only the more important and controlling questions presented.

The questions involved are of special statutory powers and limitations, and the construction is required to be of such strictness as will, at least, secure substantial conformity with the literal requirement of the terms of the statute. Less strictness than this is not a compliance with the statute.

To enable us to determine whether the statutes, under

which it is claimed the assesments were made, really author-
ized such assessments in the manner and form as they ap-
pear of record, we must turn to the provisions of the statutes
to see what is required, and who is authorized to make such
assessments.

The statutes of the United States upon this subject, relat-
ing to the District of Columbia, as contained in the Rev.
Stats. D. C., ch. 8, secs. 195 to 204, authorized the Legis-
lative Assembly, then in existence, to supply the inhabitants
of Washington and Georgetown with Potomac water from
the aqueduct mains or pipes laid in the streets and avenues
by the United States, and to make all laws and regulations
for the proper distribution of the same; to establish a scale
of annual rates for the supply and use of the water, and gen-
erally to enact such laws as might be necessary to supply
the inhabitants of Washington and Georgetown with pure
and wholesome water, and to carry into full effect the pro-
visions of said chapter 8 of the Revised Statutes. It is fur-
ther provided that a water tax may be levied and collected
on all real property within the limits of the city of Wash-
ington, which binds or touches on any avenue, street, or
alley in which a main water pipe may be laid by the United
States or by the District; that the water tax may be levied
on lots in proportion to their frontage or their area, as may
be determined by law, and may be collected in not less than
three nor more than five annual installments; and that the
water tax so authorized to be levied and collected shall con-
stitute a fund to be used exclusively to defray the cost of
distribution of the water, including all necessary fixtures and
machines connected with such distribution.

In pursuance of the authority thus delegated, the Legis-
lative Assembly, by act approved June 23, 1873 (Comp.
Sts. D. C., ch. 68, sec. 45), provided as follows:

" That hereafter, in order to defray the expense of laying
water mains and the erection of fire plugs, there be, and is
hereby, levied a special tax of one and a quarter cents per
square foot on every lot and part of lot which binds in or

touches on any avenue, street or alley, in which a main water pipe may hereafter be laid and fire plug erected, *which tax shall be assessed* by the water registrar, *within thirty days after such water mains and fire plugs shall have been laid and erected ;* of which assessments the water registrar *shall immediately notify the owner or agent of the property chargeable therewith,* setting forth in said notice the number of the square in which it is situated, the property on which said tax is assessed, and the street, avenue or alley on which it fronts ; and the said tax *shall be due and payable* in four equal installments, the first of which *shall be payable within thirty days from the date of the notice,"* &c.

By section 204 of the Revised Statutes, D. C., it was provided that " *On petition of the owners* of the majority of the real estate on any square or line of square in the city of Washington, water pipes might be laid and fire plugs and hydrants erected wherever the same might be requisite and necessary for public convenience, security from fire or for health." But this section was modified or repealed by the act of Congress of June 17, 1890, which, as a substitute for the former section, provides that " The Commissioners of the District of Columbia shall have the power to lay water mains and water pipes and to erect fire plugs and hydrants wherever the same may be *in their judgment necessary* for the public safety, comfort or health."

This substituted section of June 17, 1890, as will be observed, does not confer upon the Commissioners any power to make assessments upon abutting property, or to give notice to the property owners of such assessments, but only confers upon them unconditional and unrestricted authority to determine the question of the propriety and necessity of laying water mains and water pipes, and of erecting fire plugs and hydrants, without respect to petitions or applications of property owners. Property owners may petition for such improvements, but such petition is not essential to the exercise of the power or jurisdiction of the Commissioners in directing such improvement, if, *in their judg-*

*ment*, it be necessary for the public comfort and health that it should be made ; and the fact that the improvement has been authorized and directed by the Commissioners must be taken as conclusive of the fact, that it was deemed necessary or proper for the public safety, comfort or health. Nor does this act of 1890, as contended by counsel for the appellee, in any manner change the pre-existing system of levying special taxes upon abutting property to defray the expenses of laying water mains, and otherwise providing for the distribution of water, as provided in section 203, Rev. Stat. D. C. That power still exists in full force. And there is clearly no transfer, *by implication*, as contended by the counsel for the appellant, by operation of either the act of Congress of June 10, 1879, or the act of June 17, 1890, or both acts combined, of the power to assess and give notice thereof, from the water registrar (or the collector) to the Commissioners. The latter power conferred upon the water registrar (or the collector), is distinct from the power to lay water mains and pipes, and to erect plugs and hydrants—the exercise of the one power in no manner involving the exercise of the other. The power of the water registrar remains unrepealed and unrestricted, in respect to the assessment and notice thereof, as provided by the act of the Legislative Assembly of June 23, 1873. By this last mentioned act, as we have already seen, it is expressly declared that the tax shall be assessed by the water registrar, and that he shall give notice to the owner of the property, in the manner specified.

In this case, on the record returned in response to the writ of *certiorari*, it does not appear that any part of this requirement of the statute has been complied with. It is expressly admitted that there is no record showing any assessment, or notice given thereof, as to any of the lots mentioned in the petition of the appellee for the writ of *certiorari*, by the water registrar of the District. Indeed, it is affirmatively shown that the only attempt made to assess the property was made by the Commissioners, in which the registrar or the collector had no participation whatever.

It may be that the record shows sufficient evidence of the legal exercise of the power by the Commissioners, under the act of Congress of the 17th of June, 1890, with respect to the laying the mains along the property sought to be taxed ; but before any liability could attach upon the abutting property or the owners thereof, it was necessary as a condition precedent to such liability, that the assessment should have been made within thirty days after the completion of the work, and notice thereof given as prescribed. Without this proceeding no liability could arise, and no proceeding could be taken against the property or its owner. It is essential, therefore, that the record should contain evidence of a strict compliance with the statute in this respect. *Lyon* v. *Alley*, 130 U. S. 177. And that being so, and the record failing to show conformity to the requirement of the statute in the attempted assessment of the tax, there is no right in the respondent to enforce the tax charged to the property of the appellee.

We might stop here and affirm the judgment of the court below for the defect in the proceedings to which we have referred. But the principal question raised on assignment of error and discussed in argument, and, as we are informed, upon which the court below acted in quashing the proceedings returned under the writ, is the failure to give notice to the property owners along the line of the improvement before the work was commenced. And as this is an important question in these cases, and the question being fully presented on this record, we deem it proper to decide it.

The contention of the appellee with respect to the requirement of notice as preliminary to the commencement of the improvement, is supposed to derive support from the decision of this court in the case of *Allman* v. *District of Columbia*, 3 App. D. C. 8. But it is clear, we think, this case is quite distinguishable from the Allman case. In that case there was no legislative determination, as there is in the present, as to what should be the uniform rate of assessment of all property binding upon the line of

improvement.   This fixed rate of assessment the Legislative Assembly of this District had, by virtue of the power delegated to it by Congress, full power to determine upon and fix beyond the power of review by the courts.   The rate thus fixed is uniform, as it is required to be, and it is general in its application to all property having the specified relation to the improvement—that is, binding thereon within the meaning of the statute.   It is a legislative valuation of the special benefits to the property, which is not subject to question in judicial proceedings.   Such special benefit is assessed as a tax, and it is an undeniable principle that the taxing power belongs exclusively to the legislative department of the Government; and in the exercise of that power it is competent to the legislature to settle and determine the specific rate of tax that shall be assessed upon any particular description or class of property.   That is what has been done by the Legislative Assembly in the act of June 23, 1873.   The rate of assessment upon all abutting land is fixed at one and a quarter cents per square foot.

These principles are fully reviewed and clearly stated by the Supreme Court in the case of *Spencer* v. *Merchant*, 125 U. S. 345.   That case arose upon and involved the validity of a special assessment made under a statute of the State of New York, passed in 1881, and where one of the principal grounds of objection was the want of notice to the property owner.   Without going into the special facts of that case, we shall quote from the opinion of the court, as delivered by Mr. Justice GRAY, what is strictly applicable to this case.   At pages 355 and 356 of the report the court say:

" The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby ; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion.   *Wil-*

*lard* v. *Presbury*, 14 Wall. 676 ; *Davidson* v. *New Orleans*, 96 U. S. 97 ; *Mobile Co.* v. *Kimball*, 102 U. S. 691, 703, 704 ; *Hagar* v. *Reclamation District*, 111 U. S. 701. If the legislature provides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law. *McMillen* v. *Anderson*, 95 U. S. 37 ; *Davidson* v. *New Orleans* and *Hagar* v. *Reclamation District*, above cited.   *   *   *

" In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the legislature of the State, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners.

" When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much. But the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited ; and, if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited. And in determining what lands are benefited by the improvement, the legislature may avail itself of such information as it deems sufficient, either through investigations by its committees, or by adopting as

its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction."

In proceedings taken for assessment under the legislative act of 1873, notice is provided for to the property owner, not before the work of improvement is done, it is true, but before the assessment can become effective ; and under that notice all questions and objections not concluded by legislative action, may be taken and urged against the whole proceeding. This, in such case, would seem to be all the notice that the property owner really requires or is entitled to receive. In this case, however, it does not appear from the record of proceedings produced on the return to the writ, that any notice whatever was given by the officer authorized and required to give it.

With respect to the other alleged grounds of invalidity of the assessment set forth in the petition for the writ of *certiorari*, it is unnecessary that they should be considered. It follows from what we have said that the judgment of the court below must be affirmed. We are informed by a statement in brief of counsel for appellant, that a decision in this case adverse to the legality of the proceedings involved will affect a large amount of taxes due the municipal government, depending upon similar proceedings to the present. This is greatly to be regretted, but we are powerless to avert the misfortune. The only suggestion that we can make is, that a curative act of Congress be procured, extending the time for assessment and notice—an act something of the kind that was procured in New York, and considered in the case of *Spencer* v. *Merchant, supra*.                  *Judgment affirmed.*