## SPENCER v. MERCHANT.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 872. Submitted February 7, 1888. — Decided April 2, 1888.

A judgment of the highest court of a State, sustaining the validity of an assessment upon lands under a statute of the State, which was alleged to be unconstitutional and void because it afforded to the owners no opportunity to be heard upon the whole amount of the assessment, involves a decision against a right claimed under the provision of the Fourteenth Amendment to the Constitution of the United States prohibiting the taking of property without due process of law, and may be reviewed by this court on writ of error, although the Constitution of the State contains a similar provision, and no constitutional provision is specifically mentioned in the record of the State court.

If the legislature of a State, in the exercise of its power of taxation, directs the expense of laying out, grading or repairing a street to be assessed upon the owners of lands benefited thereby; and determines

the whole amount of the tax, and what lands, which might be so bene-
fited, are in fact benefited; and provides for notice to and hearing of
each owner, at some stage of the proceedings, upon the question what
proportion of the tax shall be assessed upon his land; there is no taking
of his property without due process of law, in violation of the Four-
teenth Amendment to the Constitution of the United States.

Pursuant to an act of the legislature of New York, the expense of grading
a street was assessed by commissioners upon the lands lying within
three hundred feet on either side of the street, and which would, in the
judgment of commissioners, be benefited. After the sums so assessed
upon some lots had been paid, the Court of Appeals of the State ad-
judged the assessment to be void, because the act made no provision for
notice to or hearing of the land-owners. The legislature then passed
another act, directing a sum equal to so much of the first assessment as
had not been paid, adding a proportional part of the expenses of making
that assessment, and interest since, to be assessed upon and equitably
apportioned among the lots, the former assessment on which had not
been paid, first giving notice to all parties interested to appear and be
heard upon the question of the apportionment of this sum among these
lots, but not as to any apportionment between them and those lots, the
former assessments upon which had been paid. *Held*, that an assess-
ment laid under the latter statute was not a taking of property without
due process of law, in violation of the Fourteenth Amendment to the
Constitution of the United States.

THIS case was submitted to the general term in Kings County
of the Supreme Court of the State of New York under § 1279
of the Code of Civil Procedure, without process, upon an
agreed statement of facts signed by the parties, the substance
of which, and of the statutes therein referred to, was as fol-
lows:

On June 20, 1883, the parties made a contract in writing,
by which the plaintiff agreed to sell to the defendant a parcel
of land in the town of New Lots in that county, and to execute
and deliver a deed thereof, with full covenants of warranty,
and free of all incumbrances, in consideration of the sum of
$8000, part of which was paid, and the rest was payable on
delivery of the deed. Upon examination, the defendant dis-
covered that there remained unpaid on the land an assessment
of $1221.73, with interest from November 3, 1881, and de-
manded that the plaintiff should pay it, but he refused. The
assessment was made under the following circumstances:

By the statute of the State of New York of 1869, c. 217, as

amended by the statute of 1870, c. 619, it was enacted in § 1, that the Supreme Court held in the county of Kings should, upon the application of one or more freeholders of the town of New Lots, appoint three commissioners, who, by § 2, should immediately proceed to lay out in that town a street or avenue in continuation of Atlantic, Avenue in the city of Brooklyn, and, by § 3, take the lands lying within the boundaries of the avenue so laid out, and, after public notice in two, or more newspapers of the county, "at least twenty days before meeting for that purpose, of their intention to proceed to make the award and assessment required by this act, and of the time when and the place where they will meet for that purpose, at which meeting all persons interested may appear and be heard in relation to the said award and assessment," award damages to the owners of those lands, and assess the amount of the award and the attendant expenses upon the lands lying within three hundred feet on either side of the avenue, which in their judgment should be benefited by opening and extending it, and report such award and assessment to the court for confirmation, after public notice that all persons having any objection to it might be heard before the court; and that upon its confirmation the amount of the assessment should be added by the county supervisors to and made part of the annual taxes for three years, one third each year, with interest on the portions unpaid, and, when collected, be paid over to the owners of the lands taken.

The statute of 1869, as amended by the statute of 1870, further provided, in § 4, that upon the confirmation of the report as to the opening of the street, the commissioners should, be authorized to enter upon the land taken, to cause it to be regulated, prepared and graded for public travel, and to assess the expense of such regulating, grading and preparing for travel "upon the lands and premises which, in their judgment, shall be benefited by such improvement, in proportion to the benefit accruing to them by reason thereof, the district of assessment to extend back as provided heretofore in this act;" and that the amounts so assessed, together with interest at the rate of seven per cent a year from the making of the assess-

ment, should be added to and made a part of the annual taxes for the ensuing year upon the lands assessed, and, when collected, be applied to the payment of bonds issued under that statute.

The commissioners were appointed, laid out the street, and regulated, graded and prepared it for travel, and made the award and assessments, as directed by the statutes aforesaid. The assessment made under § 4 for the expense of regulating, grading and preparing the street for travel, amounted to more than $100,000. The sums so assessed upon some lots were paid; but the sums assessed upon other lots remained unpaid, the owners of these lots contesting the validity of the assessment. The principal amount of the unpaid part of that assessment, being $40,664.96, was returned for five years as uncollected by the treasurer of Kings County to the comptroller of the State, and, together with interest thereon at the yearly rate of five per cent and amounting to $8293.33, was paid or credited in account by the State to the treasurer of Kings County. On June 18, 1878, the Court of Appeals declared that assessment void. *Stuart* v. *Palmer*, 74 N. Y. 183. On January 29, 1879, the comptroller of the State cancelled the unpaid assessment, and charged the county with the amount thereof, being $40,664.96, together with the interest thereon to February 1, 1879, amounting to $8293.33.

On August 12, 1881, the legislature of New York, by the statute of 1881, c. 689, directed the board of supervisors of Kings County to levy on the assessment roll of the town of New Lots for 1881, upon the lands, the assessment made upon which, under § 4 of the act of 1869, had been so cancelled by the comptroller, and charged to the county of Kings, "a sum equitably apportioned among the several parcels comprising said lands, which shall be sufficient to refund to the State of New York the sum its due by reason of such cancellation, which sum, amounting to $40,664.96, was duly credited August 28th, 1876, by the comptroller of said State to the treasurer of Kings County, and the interest charged thereon by said comptroller, as required by law, to February 1st, 1879, amounting to $8293.33, together with further interest thereon,

at six per centum per annum, from February 1st, 1879, to the date of such levy. Before proceeding to levy such sums, the said board shall apportion the same among the several parcels of land hereinbefore mentioned, and said board shall give ten days' notice of the time and place when they will meet to make such apportionment, which notice shall be published daily in a newspaper published in the county of Kings, and all parties interested in said lands shall be entitled to be heard before said board upon the question of said apportionment." The statute of 1881 further provided that the sums so levied should be collected by the collector of taxes of the town of New Lots, and paid over to the county treasurer, and by him applied "to pay the amount so due the State of New York by reason of such cancellation."

Under and pursuant to this statute, the supervisors of Kings County added to the aforesaid sums of $40,664.96, being the unpaid balance of the previous assessment, and $8293.83, being the interest thereon to February 1, 1879, further interest thereon at the yearly rate of six per cent from that date to November 3, 1881, the day of the final conclusion of their report, and assessed and levied the aggregate sum of $55,653.52 upon the plaintiff's and other lots.

The lots so assessed were isolated parcels, not contiguous, and many of them not fronting on the avenue. Most of the territory benefited as fixed by the statute of 1869, and a great portion of the original assessment, were not included in the statute of 1881, nor directed to be taken into consideration in making the new assessment. But this assessment included a proportionate part of the expenses of the former assessment, which had been declared void by the Court of Appeals.

The case stated by the parties, after setting forth the foregoing facts, continued and concluded as follows:

"The plaintiff claims that said assessment of 1881 in question is not a lien or cloud on the title to said premises; and the defendant refuses to pay the balance of said consideration until the plaintiff allows it to be deducted from the consideration money or pays the same, neither of which is the plaintiff willing to do; and the plaintiff also claims that the statute

of 1881, c. 689, is unconstitutional, and therefore void, for the reason that it is an attempt made by the legislature of this state to validate a void assessment (and to do the same without giving the property-holders an opportunity to be heard as to the total amount of the assessment, only providing for a hearing on the apportionment), which was levied upon said premises under and pursuant to c. 217 of the laws of 1869, as amended by c. 619 of the laws of 1870 ; and that the statute of 1881 is clearly void for the further reasons that the defect in the former assessment was jurisdictional, and it has been so declared and decided by the Court of Appeals in the case of *Stuart* v. *Palmer*, 74 N. Y. 183, and is special and invidious, and unjustly and illegally apportioned upon certain individuals without reference to a uniform standard, and is an arbitrary exaction, and is levied on an individual or individuals to the exclusion of others in the same district. The defendant doubts the said claim of the plaintiff. The question submitted to the court upon this case is as follows :

"Is the assessment levied on the property in 1881 in question a good and valid lien or cloud on said property ?

" If this question is answered in the affirmative, then judgment is to be rendered in favor of the defendant and against the plaintiff, requiring the plaintiff to pay said assessment to deliver a deed according to contract.

" If it be answered in the negative, then judgment is to be rendered in favor of the plaintiff, requiring the defendant to take title to said premises in accordance with the contract above mentioned, without the plaintiff paying said assessment or tax, and without deducting the same out of the consideration money."

The Supreme Court of New York gave judgment for the defendant, and the plaintiff appealed to the Court of Appeals, which affirmed the judgment and remitted the case to the Supreme Court. 100 N. Y. 585. The plaintiff sued out this writ of error, and assigned for error that it appeared by the record that both those courts held that the statute of 1881, c. 689, and the proceedings under it were constitutional and valid, " whereas the said courts should have decided that the

said statute and the proceedings thereunder were in violation of the Constitution of the United States and were void, for the reason that they deprived the said plaintiff and the other persons assessed thereunder of their property without due process of law."

*Mr. Matthew Hale* and *Mr. Albert Day* for plaintiff in error.

*Mr. Walter E. Ward* for defendant in error.

MR. JUSTICE GRAY, after stating the case as above reported, delivered the opinion of the court.

The leading facts of this case are as follows: The original assessment of the expenses of regulating, grading and preparing the street for travel was laid by commissioners, as directed by § 4 of the statute of 1869, upon all the lands lying within three hundred feet on either side of the street, and which, in the judgment of the commissioners, would be benefited by the improvement. After the sums so assessed upon some lots had been paid, the Court of Appeals of the State declared that assessment void, because the statute, (although it made ample provision for notice of and hearing upon the previous assessment for laying out the street under § 3,) provided no means by which the land-owners might have any notice or opportunity to be heard in regard to the assessment for regulating, grading and preparing the street for travel under § 4. *Stuart* v. *Palmer*, 74 N. Y. 183. The lots, the sums assessed upon which had not been paid, were isolated parcels, not contiguous, and some of them not fronting upon the street. By the statute of 1881, a sum equal to so much of the original assessment as remained unpaid, adding a proportional part of the expenses of making that assessment, and interest since, was ordered by the legislature to be levied and equitably apportioned by the supervisors of the county upon and among these lots, after public notice to all parties interested to appear and be heard upon the question of such apportionment; and that sum was levied and assessed accordingly upon these lots, one of which was owned by the plaintiff.

The question submitted to the Supreme Court of the State was whether this assessment on the plaintiff's lot was valid. He contended that the statute of 1881 was unconstitutional and void, because it was an attempt by the legislature to validate a void assessment, without giving the owners of the lands assessed an opportunity to be heard upon the whole amount of the assessment. He thus directly, and in apt words, presented the question whether he had been unconstitutionally deprived of his property without due process of law, in violation of the first section of the Fourteenth Amendment to the Constitution of the United States, as well as of art. 1, sec. 7, of the Constitution of New York; and no specific mention of either constitutional provision was necessary in order to entitle him to a decision of the question by any court having jurisdiction to determine it. The adverse judgment of the Supreme Court, affirmed by the Court of Appeals of the State, necessarily involved a decision against a right claimed under the Fourteenth Amendment to the Constitution of the United States, which this court has jurisdiction to review. *Bridge Proprietors* v. *Hoboken Co.*, 1 Wall. 116, 142; *Murray* v. *Charleston*, 96 U. S. 432, 442; *Furman* v. *Nichol*, 8 Wall. 44, 56; *Chicago Life Ins. Co.* v. *Needles*, 113 U. S. 574, 579.

The jurisdiction of this court, as is well understood, does not extend to a review of the judgment of the State court, so far as it depended upon the Constitution of the State. *Provident Institution for Savings* v. *Jersey City*, 113 U. S. 506, 514. Yet, as the words of the two constitutions are alike in this respect, the decisions of the highest court of the State upon the effect of these words are entitled to great weight. The substance of the former decisions, and the grounds of the judgment sought to be reviewed, can hardly be more compactly or forcibly stated than they have been by Judge Finch in delivering the opinion of the Court of Appeals, as follows:

"The act of 1881 determines absolutely and conclusively the amount of tax to be raised, and the property to be assessed and upon which it is to be apportioned. Each of these things was within the power of the legislature, whose action cannot be reviewed in the courts upon the ground that it acted un-

justly or without appropriate and adequate reason. *Litchfield*
v. *Vernon*, 41 N. Y. 123, 141; *People* v. *Brooklyn*, 4 N. Y.
427; *People* v. *Flagg*, 46 N. Y. 405; *Horn* v. *New Lots*, 83
N. Y. 100; Cooley on Taxation, 450. The legislature may
commit the ascertainment of the sum to be raised and of the
benefited district to commissioners, but it is not bound to do
so, and may settle both questions for itself; and when it does
so, its action is necessarily conclusive and beyond review.
Here an improvement has been ordered and made, the ex-
pense of which might justly have been imposed upon adjacent
property benefited by the change. By the act of 1881, the
legislature imposes the unpaid portion of the cost and expense,
with the interest thereon, upon that portion of the property
benefited which has thus far borne none of the burden. In so
doing, it necessarily determines two things, viz., the amount
to be realized, and the property specially benefited by the
expenditure of that amount. The lands might have been ben-
efited by the improvement, and so the legislative determina-
tion that they were, and to what amount or proportion of the
cost, even if it may have been mistakenly unjust, is not open
to our review. The question of special benefit and the prop-
erty to which it extends is of necessity a question of fact, and
when the legislature determines it in a case within its general
power, its decision must of course be final. We can see in the
determination reached possible sources of error and perhaps
even of injustice, but we are not at liberty to say that the tax
on the property covered by the law of 1881 was imposed with-
out reference to special benefits. The legislature practically
determined that the lands described in that act were peculiarly
benefited by the improvement to a certain specified amount
which constituted a just proportion of the whole cost and
expense; and while it may be that the process by which the
result was reached was not the best attainable, and some other
might have been more accurate and just, we cannot for that
reason question an enactment within the general legislative
power. That power of taxation is unlimited, except that it
must be exercised for public purposes. *Weismer* v. *Douglas,*
64 N. Y. 91. Certainly if the acts of 1869 and 1870 had

never been passed, but the improvement of Atlantic Avenue had been ordered, the legislature might have imposed one part or proportion of the cost upon one designated district and the balance upon another. Practically just that was done in this case. In *Re Van Antwerp*, 56 N. Y. 261, an assessment for a street improvement had been declared void by reason of failure to procure necessary consents of property-owners. The legislature made a reassessment, imposing two thirds of the expense upon a benefited district and one third upon the city at large. The act was held valid as a new assessment and not an effort to validate a void one.

"These views furnish also an answer to the objection that the only hearing given to the land-owner relates to the apportionment of the fixed amount among the lots assessed, and none is given as to the aggregate to be collected. No hearing would open the discretion of the legislature, or be of any avail to review or change it. A hearing is given by the act as to the apportionment among the land-owners, which furnishes to them an opportunity to raise all pertinent and available questions, and dispute their liability, or its amount and extent. The precise wrong of which complaint is made appears to be that the land-owners now assessed never had opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation. The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confided to its jurisdiction. It may err, but the courts cannot review its discretion. In this case, it kept within its power when it fixed, first, the amount to be raised to discharge the improvement debt incurred by its direction; and, second, when it designated the lots and property, which in its judgment, by reason of special benefits, should bear the burden; and having the power, we cannot

criticise the reasons or manner of its action. The land-owners were given a hearing, and so there was no constitutional objection in that respect. Nor was that hearing illusory. It opened to the land-owner an opportunity to assail the constitutional validity of the act under which alone an apportionment could be made, and that objection failing, it opened the only other possible questions, of the mode and amounts of the apportionment itself. We think the act was constitutional." 100 N. Y. 587–589.

The general principles, upon which that judgment rests, have been affirmed by the decisions of this court.

The power to tax belongs exclusively to the legislative branch of the government. *United States* v. *New Orleans,* 98 U. S. 381, 392; *Meriwether* v. *Garrett,* 102 U. S. 472. In the words of Chief Justice Chase, condensing what had been said long before by Chief Justice Marshall, "The judicial department cannot prescribe to the legislative department limitations upon the exercise of its acknowledged powers. The power to tax may be exercised oppressively upon persons; but the responsibility of the legislature is not to the courts, but to the people by whom its members are elected." *Veazie Bank* v. *Fenno,* 8 Wall. 533, 548; *McCulloch* v. *Maryland,* 4 Wheat. 316, 428; *Providence Bank* v. *Billings,* 4 Pet. 514, 563. See also *Kirtland* v. *Hotchkiss,* 100 U. S. 491, 497. Whether the estimate of the value of land for the purpose of taxation exceeds its true value, this court on writ of error to a State court cannot inquire. *Kelly* v. *Pittsburgh,* 104 U. S. 78, 80.

The legislature, in the exercise of its power of taxation, has the right to direct the whole or a part of the expense of a public improvement, such as the laying out, grading or repairing of a street, to be assessed upon the owners of lands benefited thereby; and the determination of the territorial district which should be taxed for a local improvement is within the province of legislative discretion. *Willard* v. *Presbury,* 14 Wall. 676; *Davidson* v. *New Orleans,* 96 U. S. 97; *Mobile County* v. *Kimball,* 102 U. S. 691, 703, 704; *Hagar* v. *Reclamation District,* 111 U. S. 701. If the legislature pro-

vides for notice to and hearing of each proprietor, at some stage of the proceedings, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law. *McMillen* v. *Anderson*, 95 U. S. 37; *Davidson* v. *New Orleans*, and *Hagar* v. *Reclamation District*, above cited.

In *Davidson* v. *New Orleans*, it was held that if the work was one which the State had the authority to do, and to pay for by assessments on the property benefited, objections that the sum raised was exorbitant, and that part of the property assessed was not benefited, presented no question under the Fourteenth Amendment to the Constitution, upon which this court could review the decision of the State court. 96 U. S. 100, 106.

In the absence of any more specific constitutional restriction than the general prohibition against taking property without due process of law, the legislature of the State, having the power to fix the sum necessary to be levied for the expense of a public improvement, and to order it to be assessed, either, like other taxes, upon property generally, or only upon the lands benefited by the improvement, is authorized to determine both the amount of the whole tax, and the class of lands which will receive the benefit and should therefore bear the burden, although it may, if it sees fit, commit the ascertainment of either or both of these facts to the judgment of commissioners.

When the determination of the lands to be benefited is entrusted to commissioners, the owners may be entitled to notice and hearing upon the question whether their lands are benefited and how much. But the legislature has the power to determine, by the statute imposing the tax, what lands, which might be benefited by the improvement, are in fact benefited; and if it does so, its determination is conclusive upon the owners and the courts, and the owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment, and its apportionment among the different parcels of the class which the legislature has conclusively determined to be benefited.

In determining what lands are benefited by the improvement, the legislature may avail itself of such information as it deems sufficient, either through investigations by its committees, or by adopting as its own the estimates or conclusions of others, whether those estimates or conclusions previously had or had not any legal sanction.

In § 4 of the statute of 1869, the assessment under which was held void in *Stuart* v. *Palmer*, 74 N. Y. 183, for want of any provision whatever for notice or hearing, the authority to determine what lands, lying within three hundred feet on either side of the street, were actually benefited, was delegated to commissioners.

But in the statute of 1881 the legislature itself determined what lands were benefited and should be assessed. By this statute the legislature, in substance and effect, assumed that all the lands within the district defined in the statute of 1869 were benefited in a sum equal to the amount of the original assessment, the expense of levying it, and interest thereon; and determined that the lots upon which no part of that assessment had been paid, and which had therefore as yet borne no share of the burden, were benefited to the extent of a certain portion of this sum. That these lots as a whole had been benefited to this extent was conclusively settled by the legislature. The statute of 1881 afforded to the owners notice and hearing upon the question of the equitable apportionment among them of the sum directed to be levied upon all of them, and thus enabled them to contest the constitutionality of the statute; and that was all the notice and hearing to which they were entitled.

It is objected to the validity of the new assessment, that it included interest upon the unpaid part of the old assessment, and a proportionate part of the expense of levying that assessment. But, as to these items, the case does not substantially differ from what it would have been if a sum equal to the whole of the original assessment, including the expense of levying it, and adding the interest, had been ordered by the statute of 1881 to be levied upon all the lands within the district, allowing to each owner, who had already paid his share

of the original assessment, a credit for the sum so paid by him, with interest from the time of payment.

*Judgment affirmed.*

Mr. Justice Matthews, with whom concurred Mr. Justice Harlan, dissenting.

I am unable to agree with the judgment of the court in this case, and will state very briefly the ground of my dissent.

In *Stuart* v. *Palmer*, 74 N. Y. 183, the Court of Appeals of the State of New York declared the statute of the State of New York of 1869, chapter 217, as amended by the statute of 1870, chapter 619, and the assessment made in pursuance thereof, to be unconstitutional and void. In the opinion of the court in that case, delivered by Earl, Judge, and which was the unanimous opinion of the court, the ground of its judgment was stated as follows (p. 188): "I am of opinion that the Constitution sanctions no law imposing such an assessment without a notice to, and a hearing, or an opportunity of hearing, by the owners of the property to be assessed. It is not enough that the owners may by chance have notice, or that they may as a matter of favor have a hearing. The law must require notice to them, and give them a right to a hearing, and an opportunity to be heard. It matters not, upon the question of the constitutionality of such a law, that the assessment has in fact been fairly apportioned. The constitutional validity of law is to be tested, not by what has been done under it, but by what may by its authority be done. The legislature may prescribe the kind of notice, and the mode in which it shall be given, but it cannot dispense with all notice." And, on page 190, it was further said: "The legislature can no more arbitrarily impose an assessment, for which property may be taken and sold, than it can render a judgment against a person without a hearing. It is a rule founded upon the first principles of natural justice, older than written constitutions, that a citizen shall not be deprived of his life, liberty, or property without an opportunity to be heard in defence of his rights, and the constitutional provision that no person shall be deprived of

these 'without due process of law,' has its foundation in this rule. This provision is the most important guaranty of personal rights to be found in the Federal or State Constitutions. It is a limitation upon an arbitrary power, and is a guaranty against arbitrary legislation. No citizen shall arbitrarily be deprived of his life, liberty, or property. This the legislature cannot do, nor authorize to be done. 'Due process of law' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. *Weimer* v. *Bunbury*, 30 Mich. 201. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights."

Accordingly, the assessment for the expense of regulating and grading the avenue under the act of 1869, as amended by the act of 1870, was declared null and void as against parties refusing to pay.

Subsequently, by the statute of 1881, chapter 689, the legislature of New York directed the levy to be made upon the lands, the assessment made upon which under the act of 1869 had been declared void and cancelled, of the same sum which had been assessed under the act of 1869, together with interest thereon to February 1, 1879, amounting to $8293.33, and further interest thereon at six per cent per annum from February 1, 1879, to the date of such levy. This act required the Board of Supervisors of Kings County to apportion this sum among the several parcels of land mentioned, after giving ten days' notice of the time and place when they would meet to make such apportionment, to the parties interested in said lands, who should be entitled to be heard before the board upon the question of the apportionment. It is to be observed, however, that this apportionment is only to be made as between the lands in respect to which the prior assessment had been cancelled as being void. The question of the original apportionment between those lands and the remaining lands, on which the owners had paid the first assessment, was not left open under the act of 1881. By this act, therefore, the owners of the lands

in question were deprived of the opportunity of being heard upon the question whether the apportionment as between them and the other land owners, embraced within the original assessment district for the same improvement, was equitable and fair. They were, therefore, deprived by the act of 1881 of the very thing of which they were deprived by the act of 1869, on account of which the Court of Appeals of New York held the latter act to be unconstitutional and void. It is impossible for me, therefore, to reconcile the opinion of the Court of Appeals of New York now under review and the opinion of the same court in the case of *Stuart* v. *Palmer*. The same objection applies to both statutes with equal force. As I think the Court of Appeals was right in its judgment upon the first statute, I am of opinion that its judgment upon the act of 1881, involved in this writ of error, should be reversed.

The argument against this conclusion, which seems to be chiefly relied on, is, that in the act of 1881 the legislature made a new assessment upon a new assessment district created for that purpose by the statute, and fixed the whole amount to be raised, leaving the question of apportionment open as between the parties, upon notice and a hearing, and that all this was within the admitted competency of the legislative power of the State, the exercise of which cannot be construed as depriving the parties of their property without due process of law. But it seems to be a mere evasion to say that this was an original assessment upon a district created by law for that purpose, consisting of the lands adjudged by the legislature to be benefited by the improvement. The improvement was ordered by the act of 1869, and the assessment district was created by it, and so far as the laying out of the street and the appropriation of private property for that purpose, and awarding damages to the owners thereof, and assessing the amount of such awards, and the attendant expenses upon the lands lying within three hundred feet on either side of the avenue, which in the judgment of the commissioners should be benefited by opening and extending the street, that act and what was thus far done under it were not invalidated, but were held to be in conformity with the Con-

stitution. In the act of 1881, the legislature of New York did not profess to undo anything which had been done under the act of 1869, and certainly did not begin *de novo* in dealing with the improvement. On the contrary, they took that portion of the old assessment for the expense of regulating, grading, and preparing the street for travel which remained unpaid, and which had been declared to be void, and revived it by a mere act of legislation as against the parties who had been judicially declared not to be bound by it, adding interest upon it from the time when it was first charged to the State by virtue of the cancellation, as well as a part of the expenses incurred in making the original assessment. Such an act of the legislature seems to me to be in violation of that provision of the Fourteenth Amendment to the Federal Constitution which declares that no State shall deprive any person of his property without due process of law.

I am authorized by MR. JUSTICE HARLAN to say that he concurs in these views.