to enable the state to recover over against the railway company for an accident resulting primarily solely from its, the state's, gross negligence.

Moreover, I entertain doubt as to the validity of such an agreement if the construction of the state is to be upheld. It would be against public policy to permit the state to make and enforce such an agreement.

I think the verdict of the jury was correct, and should not be disturbed.

Judgment and order affirmed, with costs. All concur.

---

NEW YORK CENT. & H. R. R. CO. v. CITY OF ROCHESTER et al.

(Supreme Court, Appellate Division, Fourth Department.   January 6, 1909.)

1. CONSTITUTIONAL LAW (§ 290*) — DUE PROCESS OF LAW — PUBLIC IMPROVE-
    MENTS—BENEFITS—POWER OF LEGISLATURE.
        The Legislature has the power without violating the constitutional guaranty of due process of law to determine for itself that a public improvement should be made, the amount to be raised to pay for it, the territory to be benefited, the classes of persons and property to be assessed therefor, and the amount to be assessed to each class, even though some of the classes embrace only a single person or company; or it can commit the matter to commissioners or assessors to determine any or all of those things in a given case.
        [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

2. CONSTITUTIONAL LAW (§ 290*) — DUE PROCESS OF LAW — PUBLIC IMPROVE-
    MENTS—BENEFITS—NOTICE AND HEARING—NECESSITY.
        If the matter be committed to commissioners or assessors, notice is required to be given by them to persons interested and a hearing had before them before the determination is made, but, when the Legislature determines it itself, no notice or hearing need be given.
        [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 871–875; Dec. Dig. § 290.*]

Appeal from Trial Term, Monroe County.

Action by the New York Central & Hudson River Railroad Company against the City of Rochester and others. There was a judgment of dismissal upon the merits, and plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Harris, Haven, Beach & Harris, and Edwin A. Nash, for appellant.
William W. Webb and B. B. Cunningham, for respondents.

WILLIAMS, J. The judgment should be affirmed, with costs.

The action was brought to set aside an assessment, a warrant for the collection thereof, and a levy thereunder, and to restrain the city of Rochester from taking any proceedings to enforce the assessment, on the ground that it was illegal and void. The assessment was made by an act of the Legislature (chapter 676, p. 1722, Laws 1905) to raise money for the construction of a bridge over the railroad

tracks on Main Street East in the city of Rochester, and, in brief: Section 1 assessed $33,497.46 on all lots in a designated territory, except those assessed in the subsequent sections. Section 2 assessed $66,992.92 upon property within the territory designated in section 1 of steam railroads. Section 3 assessed $4,572.99 upon street railroads. Section 4 assessed $28,923.46 upon the city of Rochester. Section 5 directed the assessors to prepare an assessment roll, apportioning the amount assessed to each class by sections 1, 2, and 3 among the individuals or corporations of such class, according to the benefits received by each from the erection of the bridge, and insert the amount specified in section 4, as assessed against the city of Rochester. The assessors were required by the act to give notice before preparing the assessment roll, and they did so, and then made the assessment roll as directed. There was but one steam railroad liable to assessment under section 2, and but one street railroad liable to assessment under section 3. The assessors had no power under the act to make any change in the classes to be assessed or in the amount assessed to each class. In these respects the Legislature had determined the matter, and the assessors had only the right to apportion the amounts assessed to each class among the individuals of such class when there was more than one included therein. In fact, there was only one individual in each of the classes in sections 2, 3, and 4. There were many individuals in class 1. The plaintiff was the only steam railroad, and was entered in the assessment for the full amount assessed to that class. It contends that the assessment to it was illegal and void, because the act of the Legislature was unconstitutional, in that it determined the classes and the amount to be assessed to each class without giving the railroad company any opportunity to be heard as to apportionment of benefits between the different classes, and therefore as depriving the company of its property without due process of law. This expression is in the same language in the Constitution of the state of New York and of the United States.

The question is, briefly stated, whether the Legislature had power itself to determine the classes of property to be assessed, and the amount to be assessed to each class; whether doing so without notice to the persons to be assessed was a violation of this provision of these Constitutions. It seems to be settled by the courts of this state and the United States that the Legislature has the power to determine that a public improvement should be made, and the amount to be raised to pay the expenses of making the same, and the territory to be benefited thereby, and the classes of persons and property to be assessed therefor, and the amount to be assessed to each class. It may be committed to commissioners or assessors to determine any or all of these things in any given case, but the Legislature is not bound to so commit them. It may determine them itself, and, having done so, its action is not open to review by the courts. It cannot be shown to be even mistakenly unjust. When the determination of these things is committed to commissioners or assessors, notice is required to be given to the parties interested and a hearing had before them before the determination is made. When, however, the Legislature determines them itself, it may do so without any notice or hearing at all, unless

it sees fit to allow such hearing. I am unable to see how these rules are varied in a case like this, where in each of three classes there is but a single individual, and only in the fourth are there many individuals. The language of the act, except as to the city of Rochester, was general as to each class, and it may be that the Legislature was not bound to know that as a matter of fact the two railroad classes had but a single individual each. However this may be, I do not see why, if the Legislature had a right to determine two steam or street railroads should be assessed a certain fixed amount as one class, it might not just as well determine the amount to be paid by a single railroad; it being the only one in the class and the territory which the Legislature determined was benefited by the improvement.

It may be well to analyze some of the cases relied upon by the respective counsel here. The leading cases and the ones referred to distinguished and approved in all the later cases are Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289; Spencer v. Merchant, 100 N. Y. 585, 3 N. E. 682, affirmed 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763. These cases relate to the same improvement, though under different titles. The Legislature by chapter 217, p. 404, Laws 1869, amended by chapter 619, p. 1434, Laws 1870, provided for the laying out, opening, and grading of Atlantic avenue, in the town of New Lots, Kings county. The act provided for the appointment of three commissioners to lay out the avenue and improve the same. Two assessments were to be made—one for the expense of acquiring the land, and this expense was to be apportioned upon lands in proportion to the benefits, and a notice and hearing were provided for before the commissioners made their determination as to such apportionment. The other assessment was for the opening and grading the avenue, and, as to this, no notice or hearing was provided for by the act. The Court of Appeals in Stuart v. Palmer (above) held the act unconstitutional, because, having committed the determination of the questions of benefits to commissioners, it permitted them to determine this question, and apportion the same, without notice to, or an opportunity to be heard by, the persons interested. The failure to provide for such notice and hearing constituted the want of "due process of law" referred to in the Constitution. This decision was made in May, 1878. In view of the decision, and inasmuch as some persons and property that should share in the expense of the improvement had thus far escaped assessment, the Legislature passed another act with reference thereto. Chapter 689, p. 925, Laws 1881. The amount assessed under the former acts and canceled by reason of the decision was $40,-600.96, and this amount, with interest, until the new assessment could be made and a proportionate amount of the expense of the prior assessment, the Legislature, by the act of 1881, directed to be levied upon the lands against which assessments had been so canceled, to be equitably apportioned among the several parcels composing said lands, after notice to and an opportunity to be heard by persons interested in such apportionment.

The constitutionality of this act was attacked in Spencer v. Merchant (above), on the ground that it provided for no notice to or hearing of the landowners as to the amount to be collected, and that the assess-

ments were levied irrespective of the benefits to the lots assessed. The Court of Appeals held the act constitutional, stating that some of the assessments under the former acts were paid by the landowners, and this act imposed the amount to be raised to supply the loss occasioned by the former decision upon those landowners only who had thus far escaped taxation for the improvement. The court, among other things, said in its opinion:

"The act of 1881 determines absolutely and conclusively the amount of the tax to be raised, and the property to be assessed, and upon which it is to be apportioned. Each of these things was within the power of the Legislature, whose action cannot be reviewed in the courts upon the ground that it acted unjustly or without appropriate or adequate reason. The Legislature may commit the ascertainment of the sum to be raised, and of the benefited district, to commissioners, but is not bound to do so, and may settle both questions for itself, and, when it does so, its action is necessarily conclusive and beyond review. * * * The question of special benefit to the property to which it extends is of necessity a question of fact, and, when the Legislature determines it in a case within its general power, its decision must, of course, be final. * * * Certainly if the acts of 1869 and 1870 had never been passed, but the improvement of Atlantic avenue had been ordered, the Legislature might have imposed one part or proportion of the cost upon one designated district and the balance upon another. Practically just that was done in this case. * * * The precise wrong of which complaint is made appears to be that the landowners, now assessed, never had an opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the Legislature, and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, a hearing before the Legislature is never granted in the process of taxation. The Legislature determines expenditures and amounts to be raised for their payment; the whole discussion and all questions of prudence and propriety and justice being confined to its jurisdiction. It may err, but the courts cannot review its discretion. In this case it kept within its power when it fixed, first, the amount to be raised to discharge the improvement debt, incurred by its direction; and, second, when it designated the lots and property, which in its judgment by reason of special benefits should bear the burden, and, having no power, we cannot criticise the manner or reasons of its action."

The Supreme Court of the United States on appeal in this case affirmed the decision of the Court of Appeals of this state. From the statement of facts in the United States court, it appears that the lots assessed by the act of 1881 were isolated parcels, not contiguous, and many of them not fronting on the avenue. Most of the territory benefited as fixed under the statute of 1869 and 1870 and a great portion of the original assessment were not included in the statute of 1881, nor directed to be taken into consideration in making the new assessment. And the latter assessment included a proportionate part of the expenses of the former assessment which had been declared void by the Court of Appeals. The United States court quoted in full, and with approval, the opinion of the Court of Appeals, and further discussed the questions involved itself. Among other things it said:

"When the determination of the lands to be benefited is intrusted to commissioners, the owners may be entitled to notice and a hearing upon the question whether their lands are benefited and how much. But the Legislature has the power to determine by the statute imposing the tax what lands which might be benefited by the improvement are in fact benefited; and, if it does so, its determination is conclusive upon the owners and the courts, and the

owners have no right to be heard upon the question whether their lands are benefited or not, but only upon the validity of the assessment and its apportionment, among the different parcels of a class, which the Legislature has conclusively determined to be benefited. * * * In the statute of 1881 the Legislature itself determined what lands were benefited and should be assessed. By this statute the Legislature in substance and effect assumed that all the lands within the district defined in the statute of 1869 were benefited in a sum equal to the amount of the original assessment, the expense of levying it and the interest thereon; and determined that the lots upon which no part of that assessment had been paid, and which had therefore as yet borne no share of the burden, were benefited to the extent of a certain portion of this sum. That these lots, as a whole, had been benefited to this extent, was conclusively settled by the Legislature. The statute of 1881 afforded to the owners notice, and hearing upon the question of the equitable apportionment among them, of the sum directed to be levied upon all of them; * * * and that was all the notice and hearing to which they were entitled."

The appellant relies largely upon the case of Stuart v. Palmer in support of its contention here, and cites in support and approval thereof the remarks of the judges in Nehasane Pk. Ass'n v. Lloyd, 167 N. Y. 437, 60 N. E. 741; People ex rel. Moller v. O'Donnel, 183 N. Y. 12, 75 N. E. 540; People ex rel. B. Sav. Bank v. Feitner, 191 N. Y. 97, 83 N. E. 592, where the case of Stuart v. Palmer was cited with approval. The questions we are here considering were not involved in those cases; and they afford us no help in deciding this case.

In Genet v. City of Brooklyn, 99 N. Y. 296, 1 N. E. 777, it was said:

"The power of taxation is vested in the Legislature, and is practically absolute, except as restrained by constitutional limitations. The power of taxation being legislative, all the incidents are within the control of the Legislature. The purposes for which a tax may be levied, the extent of taxation, the apportionment of the tax, upon what property or class of persons the tax shall operate, whether the tax shall be general or limited to a particular locality, and in the latter case, the fixing of a district of assessment, etc., are matters within the discretion of the Legislature, and in respect to which its determination is final."

In People ex rel. Scott v. Pitt, 169 N. Y. 521, 62 N. E. 662, 58 L. R. A. 372, it was held that a provision of the charter of New Rochelle (section 208, c. 128, p. 237, Laws 1899) which fixed the amount of sewerage assessments upon abutting property at a definite sum per front foot, $3.40, was not unconstitutional and void, as involving a "taking of property without due process of law," because it failed to provide for a hearing as to benefits or the justice and equity of the principle upon which the burden was to be imposed, and was a valid exercise of legislative power. While a notice and hearing was provided for by section 210 of that act, still the local authorities could not under the act change the basis of assessment. They had no power to make the amount more or less than the $3.40 per front foot, $1.70 on each side, and yet it was held the Legislature had power to prescribe the amount of the assessment which no notice or hearing would be able to change. The opinion there was written by Judge O'Brien, who had recently written in Park Association v. Lloyd, hereinbefore referred to. In Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, 42 L. Ed. 943, it was held that a provision of an act of Congress that assessments levied for laying of water mains in the District of Columbia should be at the rate of $1.25 per lineal front

foot against all lots of land abutting on the street where the main should be laid was not unconstitutional. In the opinion the cases of Stuart v. Palmer and Spencer v. Merchant (above) were cited, the former distinguished and the latter approved. See, also, Tonawanda v. Lyon, 181 U. S. 389, 21 Sup. Ct. 609, 45 L. Ed. 908, where Spencer v. Merchant (above) was cited as showing the settled law of the state of New York. In these cases, where a fixed sum per front foot was provided as the system or rule of assessment and tax, the hearing gave the property owners no opportunity to procure any change of the system any more than in the case we are considering. They could procure any change in the classes to be assessed or the amount to be assessed to each class. They could not be heard, as they could not be here, upon the question as to whether the amounts fixed by the statutes were in accordance with the real benefits conferred. That question was conclusively determined by the Legislature itself and by Congress itself. The property owners could be heard as to any error of a clerical nature, could show they were not the owners of the whole or some part of the property assessed, and could raise the question as to the validity or constitutionality of the acts. All these cases involve the same question as that here raised, and hold that the Legislature or Congress have the power under their Constitutions to determine absolutely and without any notice or hearing of the property owners interested what property is benefited by an improvement and to what extent and to direct the amount accordingly, and, when that is done, the courts cannot review their action.

It does not seem necessary to discuss the other questions raised by the respondents in this opinion.

For the reasons hereinbefore stated, the judgment should be affirmed.

Judgment affirmed, with costs. All concur.