In the Matter of the CITY OF MOUNT VERNON, Petitioner, against BENJAMIN F. FEINBERG et al., Constituting the Public Service Commission of the State of New York, et al., Respondents.

Supreme Court, Special Term, Albany County, July 27, 1951.

*Harold A. Borgwald, Corporation Counsel* (*Irving Libenson* of counsel), for petitioner.

*Sherman C. Ward, John T. Walsh* and *Harry T. O'Brien* for Public Service Commission, respondent.

*Edward R. Brumley* for New York, New Haven and Hartford Railroad Company, respondent.

HAMM, J. For convenience and brevity the petitioner, City of Mount Vernon, the respondents, Benjamin F. Feinberg, Spencer B. Eddy, Glen R. Bedenkapp, Francis T. Mylott, Paul W. Lockwood, constituting the Public Service Commission of the State of New York, and the New York, New Haven and Hartford Railroad Company will be termed respectively the City, the Commission and the Railroad.

In 1894 the Railroad constructed a bridge over its tracks in the city of Mount Vernon. Both respondents in their answer admit that the Railroad's obligation of maintenance and repair of the bridge built in 1894 included the roadway over and

approaches to the bridge as well as the framework of the bridge and its abutments. In other words the obligation of maintenance and repair of the 1894 bridge was complete subject only to the provisions and requirement of section 93 of the Railroad Law that the obligation was to continue only: " provided the railroad corporation shall have at least ten days' notice of any defect in the roadway thereover and the approaches thereto, which notice must be given in writing by * * * duly constituted authority ". Section 93 of the Railroad Law insofar as pertinent provides as follows: " *Repair of bridges and subways at crossings*. When a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation, and the roadway thereover and the approaches thereto shall be maintained and kept in repair by the municipality having jurisdiction over and in which the same are situated * * * except that in the case of an overhead bridge constructed prior to the first day of July, eighteen hundred and ninety-seven, the roadway over and the approaches to which the railroad corporation was under obligation to maintain and repair, such obligation shall continue, provided the railroad corporation shall have at least ten days' notice of any defect in the roadway thereover and the approaches thereto, which notice must be given in writing by the town superintendent of highways or other duly constituted authority, and the railroad corporation shall not be liable by reason of any such defect unless it shall have failed to make repairs within ten days after the service of such notice upon it."

The Commission and the Railroad admit, as alleged in paragraph 15 of the petition, that: " 15. By order of the Public Service Commission, in Case No. 6742, dated October 13, 1931, upon petition of the Mayor and Common Council of the City of Mount Vernon, on the basis of public necessity and safety, it was directed that the existing structure (bridge built in 1894) carrying Gramatan Avenue (formerly Fourth Avenue) over the tracks and right-of-way of the The New York, New Haven and Hartford Railroad Company in the City of Mount Vernon be reconstructed and widened. This reconstruction and widening of the original bridge constructed in 1894 was ordered pursuant to the provisions of Sections 90 and 91 of the Railroad Law and the cost thereof was apportioned amongst the respondent railroad company, the State of New York and the City of Mount Vernon, as set forth in the aforesaid order. The reconstructed bridge was constructed in 1937."

Reference to the history of the legislation is made in *Pennsylvania R. R. Co.* v. *City of Rochester* (37 N. Y. S. 2d 471, 475, affd. 267 App. Div. 801, affd. 293 N. Y. 813): " The subsequent history of these Statutes as well as their language seems to point to a legislative intent to continue an obligation to repair a bridge constructed over an existing railroad. Chapter 62 of the Laws of 1853 was repealed by Chapter 754 of the Laws of 1897 which took effect on July 1, 1897, and which divided the burdens of maintaining an overhead crossing between the railroad company and the municipality. In 1902, Laws 1902, c. 140, this Chapter was amended to except all bridges built before July 1, 1897, which the railroad company was bound to repair and maintain. The purpose of Chapter 754 was to eliminate grade crossings so far as possible (Matter of the Village of Waverly, 35 App. Div. 38, 54 N. Y. S. 368) and that purpose is now reflected in the provisions of § 90 et seq. of the Railroad Law which confers broad powers on the Public Service Commission over the method of crossing streets by railroads. The date, July 1, 1897, in the proviso of Chapter 754 after the amendment of 1902 was also the effective date of this legislation and it was an express recognition of the fact that under earlier legislation the railroad might have become obligated to repair and maintain a bridge which it had constructed "; and in *Burchard* v. *Payne* (197 App. Div. 829) further historical reference is found at pages 832–833:

" In 1897 the Legislature enacted chapter 754 of the Laws of that year, commonly known as the Grade Crossing Law, and thereby added sections 60 *et seq.* to the then existing Railroad Law (Gen. Laws, chap. 39; Laws of 1890, chap. 565). Section 64 of the Railroad Law, as added by that act, provided that ' when a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad company, and the roadway thereover and the approaches thereto shall be maintained and kept in repair by the municipality in which the same are situated;' and while this might have been confined to railroads where grade crossings were eliminated under the provisions of the act, the court, in *Bush* v. *D., L. & W. R. R. Co.* (166 N. Y. 210, 224), held that ' as the language of the statute is sufficiently broad to include existing bridges, we have held that it applies to such bridges, and the question is not an open one in this court.' (Citing *City of Yonkers* v. *N. Y. C. & H. R. R. R. Co.,* 165 N. Y. 142.) Subsequently, and in 1902 the Legislature enacted chap-

ter 140 of the Laws of that year, amending section 64 by adding to the clause above quoted the exception ' that in the case of any overhead bridge constructed prior to the enactment of sections sixty-one and sixty-two of this act, the roadway over and the approaches to which the railroad company was under obligation to maintain and repair, such obligations shall continue, provided the railroad company shall have at least ten days' notice of any defect in the roadway thereover and the approaches thereto, which notice must be given in writing by the commissioner of highways or other duly constituted authorities, and the railroad company shall not be liable by reason of any such defect unless it shall have failed to make repairs within ten days after the service of such notice upon it.' (See, also, Laws of 1909, chap. 153, amdg. said § 64. Now Railroad Law [Consol. Laws, chap. 49; Laws of 1910, chap. 481], § 93, as amd. by Laws of 1913, chap. 744, and Laws of 1916, chap. 484; since amd. by Laws of 1921, chap. 698.)

'' Obviously, this amendment of the statute operated to relieve the municipality of the absolute obligation to keep in repair ' the roadway thereover and the approaches thereto,' as the statute had been construed in *City of Yonkers* v. *N. Y. C. & H. R. R. R. Co.* (*supra*), and restored the obligation of the railroad company, under the circumstances existing in this case, to maintain the entire structure, for its duty under the original charter was to restore and maintain highways crossed by it to their former state, ' or to such state as not unnecessarily to have impaired its usefulness.' (*Bryant* v. *Town of Randolph, supra*; *Bush* v. *D., L. & W. R. R. Co.*, 166 N. Y. 210, 221.) In the latter case the court says that ' since 1835 the liability of railroad companies for injuries occasioned by their neglect to restore and maintain highways crossed by their railroads to their former state so as not to impair their usefulness, has never been questioned nor denied,' and this rule now applies to the appellant, subject, however, to the proviso that ' the railroad company shall have at least ten days ' notice of any defect in the roadway thereover and the approaches thereto.' (Railroad Law, § 93.) ''

In the present proceeding the City petitioned the Commission to direct the railroad to repair a concrete and wire mesh fence located on the 1937 bridge. The Commission determined that the fence was a part of the roadway and not a part of the framework of the bridge. This is not disputed. In *New York Central R. R. Co.* v. *County of Erie* (197 Misc. 801) the court said

(p. 803): "The railings along the sidewalks are not a part of the framework of the bridge and therefore the plaintiff is not liable for their maintenance"; and in *Burchard* v. *Payne* (197 App. Div. 829, *supra*) it is stated (p. 834): "it can hardly be doubted that the barriers upon this bridge, which was a mere substitute for the previous highway, constituted a part of the lawful roadway within the jurisdiction of the town superintendent of highways, as distinguished from the framework of the bridge and its abutments". And further in its reply memorandum the City states: "There has never been any claim by petitioner that the concrete and wire mesh fence are a part of the framework of the bridge. Counsel has always argued that this concrete and wire mesh fence are a part of the roadway".

But the Commission determined further that section 93 of the Railroad Law required the city to maintain the roadway of the bridge and its approaches. And that is the issue. The determination and order in full of the Commission recites: "The City of Mount Vernon having by a petition verified February 27, 1950, requested this Commission to direct The New York, New Haven and Hartford Railroad Company to repaint the bridge carrying Gramatan avenue and Fourth avenue over the tracks of the said railroad in the city of Mount Vernon, and public hearing after due notice having been held, and this Commission having determined that the obligation to maintain the said bridge is governed by the provisions of Section 93 of the Railroad Law, which section requires the said Railroad Company to maintain the framework of the bridge and its abutments, and further requires the City of Mount Vernon to maintain the roadway of the bridge and the approaches thereto, and having further determined that the concrete and wire mesh fence located upon the said bridge is a part of the roadway and not a part of the framework of the bridge, and that therefore the obligation to paint such fence rests upon the City of Mount Vernon, it is ordered that this proceeding be and the same hereby is closed."

The Commission denied the city's petition for rehearing and the proceedings to review are now before this court under article 78 of the Civil Practice Act.

There are no cases precisely in point as to the admitted facts here involved but there are two cases relating to the obligation of railroads in other and different circumstances to maintain the approaches to and roadways of bridges which were constructed after 1897 to replace bridges built before 1897.

In *Matter of Henner* (125 Misc. 472) three bridges were involved, one built in 1879, one built about 1905, and the third and last in 1920. It appears that the 1920 bridge was reconstructed not to satisfy public safety or convenience but rather for the sole purpose of obtaining a higher clearance for railroad traffic under it and so for the convenience of the railroad only. And apparently no proceeding was had before the Public Service Commission in connection with the rebuilding of the bridge. In holding the railroad company responsible for the maintenance of the approaches to the bridge the court said (pp. 474–475): "Increase in population or business on the highway which renders the same inadequate for the needs and safety of the public casts upon the railroad company the duty to make such changes as are reasonably necessary to provide for the needs of the public in such instances. Moreover the duty of the railroad company in such cases includes the approaches to the bridge as well as the bridge. (*Matter of City of New York* [*Park Lane South*], 206 App. Div. 269, 272.) * * * The bridge in suit, in the eye of the law, was constructed prior to July 1, 1897, because admittedly it is but a substitute for, or the successor to, a bridge which was erected in 1879. It spans the railroad company's yards and tracks on Main Street in the city of Rochester, and was first built by it, as required by law, because the highway had been interfered with, and the bridge made necessary, by the construction, maintenance and working of its system. (Railroad Law of 1890, § 64, as added by, Laws of 1897, chap. 754, § 93; *Town of Cortlandt* v. *N. Y. C. R. R. Co.*, 175 App. Div. 194.)"

In *Town of Cortlandt* v. *New York Central R. R. Co.* (175 App. Div. 194, affd. without opinion 220 N. Y. 598) a new bridge replaced the bridge that had been built before 1897. Due solely to railroad operating conditions and solely for the convenience of the railroad company the new bridge was built at a point some distance from the location of the old bridge. The Town of Cortlandt failed in charging the railroad company for the maintenance of the roadway of the new bridge because of a failure of proof that the railroad company had been obliged to maintain the roadway of the former bridge. However, the court said (p. 195): "I think that the present bridge, in the eye of the law, was constructed prior to July 1, 1897, because admittedly it is but a substitute for a bridge which had been constructed before that time."

These cases establish at least that there are circumstances in which a railroad company must maintain the approaches to and

roadway of a bridge built after 1897 to replace a bridge built before 1897. In both of these cases the circumstances included the convenience only of the railroad company as appears from the respective opinions. In the present case the circumstances are the demands of public convenience and necessity. The conclusions of the examiner appended to the Commission's order for the construction of the present bridge appear in the following paragraph excerpted from his report: " Gramatan avenue, and its extension (South Fourth avenue), is the main business street of the city and forms the most important north and south thoroughfare through the city. The bridge is located in the heart of the business district and carries dense traffic. It is posted for 14 tons with 70 per cent concentration on the rear axles, whereas highway bridges are now designed for 20 tons with 80 per cent concentration on the rear axles. The narrow width of roadway on the structure forms a bottle neck thus restricting the free flow of traffic and creating a hazard to the traveling public. Therefore public safety demands that a change and alteration under section 91 of the railroad law should be made and public necessity and convenience under section 90 of the railroad law requires the additional 15 feet in width.''

It would seem that in the performance of its continuous duty the railroad company is no more relieved of its obligation by public convenience and necessity than by its own convenience.

It is argued that the City's action in 1931 in petitioning the Commission for an order for the reconstruction of the original bridge under section 91 of the Railroad Law and for the extension of another additional fifteen feet of width across the railroad tracks pursuant to section 90 of the same statute is not consistent with its present claim of maintenance. The City could proceed in no other way. An alteration of an existing crossing for public convenience and necessity cannot now be brought about except through initiation under section 91 (*Sturman* v. *New York Central R. R. Co.*, 280 N. Y. 57, 62).

And inconsistency is alleged in that the expense of widening the bridge was borne under section 94 only one half by the Railroad and one fourth each by the City and State. That the Legislature, for purposes of grade crossing elimination or for any other purpose or purposes known to it, has provided that the Railroad should pay only one half of the expense is immaterial.

In *Matter of Henner* (*supra*) there were, as stated, three bridges, one built in 1879, one built pursuant to a special act of

1905 (L. 1905, ch. 676), and finally a third and other built in 1920. The expense of the erection of the second bridge was assessed as a tax. In the court's decision that the railroad company was responsible for the maintenance of the approaches to the third bridge there was necessarily implicit a holding that the company had likewise been responsible for the approaches to the second bridge. The court said (pp. 474–475): "It must be observed that the city later erected a bridge in the place of the first bridge built by the railroad company, the expense of which was assessed as a tax. It should be remembered, however, that this tax was assessed directly by a special act of the Legislature (Laws of 1905, chap. 676) and was sustained by the courts upon the theory that the Legislature had the absolute and complete power to finally determine that the improvement should be made; the amount to be raised to pay the expenses thereof; the territory benefited thereby and the amount to be levied against the various classes of persons and property in that locality. The power of taxation being legislative, all of its incidents are within the control of the Legislature. The purposes for which it shall be levied, the extent, the apportionment, upon what property or class of persons it shall operate, are all matters within the discretion of the Legislature and in respect to which its determination is final. These things may be committed to commissioners or assessors, but the Legislature is not bound to so commit them. It may determine them itself and having done so its action is not open to review by the courts. It cannot be shown to be even mistakenly unjust. Consequently no mention of the duty the railroad company owed to erect and maintain this bridge and its approaches, either statutory or contractual, is found in the court's decision in the action brought to test the validity of this legislation. (*N. Y. C. & H. R. R. R. Co.* v. *City of Rochester,* 129 App. Div. 805; affd., 198 N. Y. 570, on opinion of WILLIAMS, J., in the court below.) * * * The fact that taxes have been assessed against the railroad company, the city, or the taxpayers, for the erection or maintenance of the bridge in suit, or its approaches, is not available to the railroad company either by way of waiver or estoppel against the public to excuse it from the performance of the duty which the law requires of it, or of any covenant contained in its contract with the city."

The Commission also contends that, under an agreement made in 1888 between the Railroad and the City, the City should have resorted to the agreement to compel the Railroad to reconstruct the bridge at the Railroad's expense. On the admitted facts and under the law as it existed in 1888 (L. 1850. ch. 140, § 28,

subd. 5, as amd.) the Railroad independently of and without reference to the contract was required to restore the highway to "its former state, or to such state as not unnecessarily to have impaired its usefulness". (*Hatch* v. *Syracuse, Binghamton & N. Y. R. R. Co.,* 50 Hun 64, 65.) This was a statutory requirement independent of agreement between the Railroad and the City. Moreover, as stated in *Matter of Henner* (*supra,* pp. 473–474): " The construction of a bridge in the first instance was made necessary in order that the existing highway might be continued, it having been interfered with by the railroad company in the construction, maintenance and working of its railroad. While there was a definite contract entered into between the railroad company and the city, in no sense can this contract be said to have limited or reduced the duty laid upon the railroad company by the statute. In this relation it would have to be determined that the contract was made in view of the law, and in such manner the law becomes a part of the contract. Therefore, it must be held that the bridge was erected by the railroad in pursuance to the duty that the statutes then in force imposed upon it to restore the highway to its former state of usefulness and to preserve it in such shape. ' *And such duty is a continuous one.*' (*City of Mt. Vernon* v. *N. Y., N. H. & H. R. R. Co.,* 232 N. Y. 309, 317.) ''

Moreover, in *Sturman* v. *New York Central R. R. Co.* (280 N. Y. 57, *supra*) the present Chief Judge stated at pages 61–62: " The defendant is a successor of the Hudson River Railroad Company, a corporation that was created by chapter 216 of the Laws of 1846. Section 14 thereof made this provision: 'Whenever it shall be necessary for the construction of their single, double or treble railroad or way, to intersect or cross * * * any road or highway, * * * it shall be lawful for the said corporation to construct their way or ways across or upon the same; but the corporation shall restore the * * * road or highway, thus intersected, to its former state in a sufficient manner so as not to have impaired its usefulness.' So, the Railroad Law (Cons. Laws, ch. 49) has long provided: ' Every railroad corporation which shall build its road along, across or upon any * * * street, highway, plank-road or turnpike, which the route of its road shall intersect or touch, shall restore the * * * street, highway, plank-road and turnpike, thus intersected or touched, to its former state, or to such state as not to have unnecessarily impaired its usefulness, and any such highway, turnpike or plank-road may be carried by it, under or over its tracks, as may be found most expedient.' (Now § 21.)

"The burden so imposed is a continuing duty of restoration, maintenance and care and within limits requires railroad corporations to make such alterations of their highway appurtenances as from time to time become necessary to the public safety and convenience in keeping with regional developments and growth of traffic. (*City of Mt. Vernon* v. *N. Y., N. H. & H. R. R. Co.*, 232 N. Y. 309, 316, 317 and cases there cited.) This much the defendant does not deny. The main question here presented is as to the scope of that obligation in this instance. ' If it had been disregarded either in its letter or spirit, the defendant was liable for the damages resulting to the plaintiff.' (*Allen* v. *Buffalo, R. & P. Ry. Co.*, 151 N. Y. 434, 442.)

" Defendant's argument is put largely upon the more recently enacted provisions of sections 93 and 91 of the statute. These are pressed upon us as having superseded section 21 in any bearing that it might otherwise have had on this case.

"It is true that in accordance with section 93 the roadway over the bridge and the approaches thereto were to be maintained and kept in repair by the municipal or State authority having jurisdiction, except in contingencies that do not here appear. (*Weis* v. *Long Island R. R. Co.*, 262 N. Y. 352.) Section 21 may be taken to be limited accordingly. This limitation, however, leaves the case substantially the same, for section 93 also provides: 'When a highway crosses a railroad by an overhead bridge, the framework of the bridge and its abutments shall be maintained and kept in repair by the railroad corporation.' (See *Bush* v. *D., L. & W. R. R. Co.*, 166 N. Y. 210.)

" The effect of section 91 is that an alteration of an existing crossing can now be brought about only pursuant to an order of the Commission having jurisdiction made in a proceeding initiated either by the railroad corporation or by the competent municipal or State authority—and then the expense thereof is to be divided between the corporation and the community in accordance with section 94. But nothing in these procedural requirements makes section 21 any less a vital substantive part of the statute. (*People ex rel. Town of Colesville* v. *D. & H. Co.*, 177 N. Y. 337; *City of Olean* v. *Pennsylvania R. R. Co.*, 249 N. Y. 364, 368.) "

As sections 90, 91 and 94 do not in any way diminish the obligations imposed by section 21 it would seem that they in no way diminish any obligation otherwise existing by virtue of the exceptions in section 93 as to bridges built before July 1, 1897. And there seems to be no valid reason for holding that the widening of the bridge in 1937 by order of the Commission because of

public necessity and convenience relieved the Railroad of its admittedly pre-existing obligation to maintain roadway and approaches.

As to facts that are not conceded reference is again made to the provisions of section 93 of the Railroad Law that a railroad company's obligation to maintain roadways and approaches continues only "provided the railroad company shall have at least ten days' notice of any defect in the roadway thereover' and the approaches thereto, which notice must be given in writing by * * * duly constituted authority ". At the hearing before the Commission the City introduced letters to the Railroad designed to indicate giving of the required statutory notice, photographs to indicate defects and need for repairs and also the oral testimony of an engineer as to the defects and need for repairs. On the question of notice and existence of any defect issues of fact are presented involving the weight and sufficiency of evidence, which this court may not at Special Term in the first instance consider. (*Matter of Galusha* v. *Picard,* 165 Misc. 539.)

Neither in the order and determination of the Commission nor in the order denying rehearing or in the report of the examiner is there any finding as to or reference to the giving of proper notice or the need of repairs. As a matter of fact counsel for the Commission stated on the oral argument that these issues were not decided by the Commission in its order of November 9, 1950.

The City contends that on the determination of the Commission, which was made without reference to defect or notice of defect, there is presented only a question of law on conceded facts. It may be that the court at Special Term could remit to the Commission for findings on the questions of defect and notice of defect. But the parties are interested principally in the law as to the obligation of maintenance of the roadway and approaches and, only as an incident to the settling of the law, in the minor expense of painting the fence. If the City's understanding of the law and the facts is consistent with the view of the Appellate Division, the Appellate Division may remit to the Commission for further findings of fact (*Matter of Scudder* v. *O'Connell,* 272 App. Div. 251) and thereafter further proceedings may be had in accordance with the directions in *Matter of City Ice & Fuel Co.* v. *Public Service Comm.* (260 App. Div. 537).

An order may be submitted directing transfer of this proceeding to the Appellate Division of the Supreme Court, **Third Judicial Department.**