Goodrich *v.* The Winchester and Deerfield Turnpike Company and Another.

The judgment is affirmed, with costs.

*D. D Pratt* and *D. P. Baldwin,* for appellant.

*W. Z. Stuart,* for appellee.

------●------

GOODRICH *v.* THE WINCHESTER AND DEERFIELD TURNPIKE COMPANY and Another.

TURNPIKE COMPANIES.—TAXATION.—The act of *March* 6, 1865, "to allow county commissioners to organize turnpike companies," &c., (Acts 1865, p. 90,) which permits the cost of constructing such turnpikes to be assessed upon the real estate within three-fourths of a mile of the proposed road, is constitutional and valid.

APPEAL from the *Randolph* Common Pleas.

GREGORY, C. J.—*Goodrich* filed his complaint against the appellees to enjoin the collection of a tax levied against

him under the act of *March* 6, 1865, "to allow county commissioners to organize turnpike companies," &c.   Acts 1865, pp. 90—93.   The constitutionality of this act is the only question presented by the record.

By the third section it is provided that "all real estate outside of the corporate limits of any town or city, incorporated as such, three-fourths of a mile each side of the proposed road, shall be taxed to construct the said road, in proportion to the appraisement of the realty that may be on the auditor's books at the organization, and each owner shall pay his proportion of the cost of the proposed turnpike, according to the amount of his assessment of real estate within the prescribed limits."

Section seven provides that "each person paying a tax under the provisions of this act, in constructing a macadamized road," &c., "shall have, on payment, a certificate of stock to the amount of money paid, and have equal rights, in proportion to the amount of stock, in officering and managing the affairs of the company."

There is no individual liability clause.

The 18th section provides that "all gravel or macadamized roads constructed under this act shall be free within twenty years from the day of their organization."

It is claimed that the assessment authorized by this statute is not a tax, not a burden or charge imposed by the legislative power of the State upon persons or property to raise money for public purposes, but the exercise of the power of eminent domain, in taking private property for public use, "without just compensation."

There is a manifest distinction between the taxing power and that of eminent domain.   Both, in effect, appropriate private property to public uses.   They differ only in degree. Taxation exacts money from individuals as their share of the public burdens, and the tax payer, according to the theory of our system, receives a just compensation in the benefits conferred by the government in the proper application of the tax.   When, however, property is appropria-

ted by virtue of the right of eminent domain, it is taken, not as the owners share of a public burden, but as so much more than his share.

Many of our public improvements are local in their character, and confer special benefits on those in their immediate vicinity. By a long line of decisions of this court, these benefits may be set off against damages sustained by the appropriation of private property for public use, in the construction of such works. In the case in judgment the legislature has determined, and this matter is within its power, that this is a proper subject for taxation, and that the burden imposed is the just share of each person embraced in the provisions of the act. This the legislature has the right to do, unless restrained bv some provision of the constitution.

In *The People* v. *The Mayor, &c., of Brooklyn,* 4 Comst. 419, this power came under review. In that case, under the charter of the city of *Brooklyn,* the common council, in the year 1848, caused *Flushing Avenue,* one of the streets of the city, to be graded and paved at an expense of $20,390 25, which, according to a provision in the charter, was assessed upon the owners or occupants of the lands benefited by the improvement, in proportion to the amount of such benefit. After the assessment had been confirmed by the common council, *Griffin* and others, the relators, caused the proceedings to be removed into the Supreme Court of that State, where the judgment was reversed and the assessment annulled, on the ground that the statute authorizing such assessments was unconstitutional and void. The Court of Appeals reversed the decision, and RUGGLES, J., in delivering the opinion of the court says: "For the purpose of ascertaining what has been deemed, on high authority, the nature and extent of the power of taxation vested in the legislatures of the state governments, I refer to the opinion of the late Chief Justice MARSHALL, in the case of *The Providence Bank* v. *Billings,* 4 Peters 514, 561, 563. 'The

power of legislation, and consequently of taxation, operates on all the persons and property belonging to the body politic. This is an original principle, which has its foundation in society itself. It is granted by all for the benefit of all. It resides in the government as part of itself, and need not be reserved, where property of any description, or the right to use it in any manner, is granted to individuals or corporate bodies. However absolute the right of an individual may be, it is still in the nature of that right that it must bear a portion of the public burdens, and that portion must be determined by the legislature. This vital power may be abused, but the interest, wisdom and justice of the representative body, and its relations with its constituents, furnish the only security against unjust and excessive taxation, as well as against unwise legislation.' And again, in *McCulloch* v. *Maryland*, 4 Wheat. 428, the following observations are found, coming from the same high authority: 'It is admitted that the power of taxing the people and their property is essential to the very existence of government, and may be legitimately exercised on the objects to which it is applicable to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the structure of the government itself. In imposing a tax the government acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation. The people of a state, therefore, give to their government a right of taxing themselves and their property, and as the exigencies of the government cannot be limited, they prescribe no limits to the exercise of this right, resting confidently on the interest of the legislature and the influence of the constituents over their representatives to guard them against its abuse.'

"And again, at page 430, he speaks of it as 'unfit for the judicial department to inquire what degree of taxation is legitimate use, and what degree may amount to the abuse of the power.'

"Assuming this, as we safely may, to be sound doctrine, it must be conceded that the power of taxation, and of apportioning taxes, or of assigning to each individual his share of the burden, is vested exclusively in the legislature, unless this power is limited or restrained by some constitutional provision. The power of taxing and the power of apportioning taxation are identical and inseparable. Taxes cannot be laid without apportionment, and the power of apportionment is therefore unlimited, unless it be restrained as a part of the power of taxation."

In *Anderson* v. *The Kerns Draining Company,* 14 Ind. 199, PERKINS, J., in delivering the opinion of this court says: "Section 1, article 10 of the constitution declares that the legislature shall provide for a uniform and equal rate of taxation, and for a just valuation of all the property in the State; and by sections 22 and 23 of article 4, local laws authorizing taxation are prohibited. But it has already been decided that these provisions do not prohibit local taxation for objects in themselves local. They require a general, uniform levy for state purposes, but they do not forbid local taxation under general laws."

The law in question is general in its provisions. It is open to all the citizens of the State to avail themselves of its benefits. The principle in it as to taxation is the same as that recognized in the act for the incorporation of cities, so far as the improvement of streets and alleys is concerned, and is identical with that provided for under the act to authorize the construction of levees and drains, approved *June* 12, 1852, held valid in this court in *Anderson* v. *Kerns Draining Company, supra.*

It is objected to this law, that the persons paying the tax become involuntary stockholders and members of the corporation. As there is no liability imposed by the act itself, and as, in our opinion, the persons paying the tax have the right to refuse to accept the certificate of stock, we do not think that this provision renders the law unconstitutional

and void. We do not regard this as a mode of compensation for private property taken for public use. We hold the law valid on the ground that it imposes a tax for public purposes, within the constitutional power of the legislature. The stock is a benefit conferred by the legislature on those who contribute in building these roads, and may be limited in the time of its enjoyment, as provided for in section 18.

The judgment is affirmed, with costs.

*T. M. Browne* and *E. L. Watson*, for appellant.

*J. J. Cheney*, for appellees.