HARMON ET AL. *v.* BOLLEY ET AL.

[No. 23,119. Filed June 28, 1918.]

1. DRAINS.—*Assessments.*—*Legislative Power.*—The legislature has the power, subject to constitutional limitations, to authorize the imposition of special assessments for drainage improvements of a public nature on the lands benefited. p. 516.

2. EMINENT DOMAIN. — *Private Property. — Taking for Public Use.*—*Compensation.*—Article 1, §21, of the Constitution, providing that "no man's property shall be taken without just compensation," was intended to apply to the taking of specific property for a public or quasi-public use under the power of

eminent domain, and not to the state's police power nor to its taxing power.   pp. 516, 519.

3. COURTS.—*Determination of Constitutional Questions.—Judicial Authority.—State and Federal Constitutions.*—The construction of the provisions of the state Constitution by the state Supreme Court will be followed by the federal courts; and the courts of the several states are bound by the decisions of the Supreme Court of the United States upon the construction of the federal Constitution.   p. 517.

4. CONSTITUTIONAL LAW. — *"Due Process." — States. — Police Power.*—The provision of the 14th amendment to the federal Constitution that no person shall be deprived of property without due process of law does not require a notice and a judicial hearing where a state is engaged in the exercise of its police power.   p. 521.

5. CONSTITUTIONAL LAW.—*"Due Process."—Taxation.—Judicial Inquiry.*—In the exercise of the taxing power to defray the expenses of the government, due process of law does not require that the property subject to taxation or the amount of the tax to be raised shall be determined by a judicial inquiry. p. 522.

6. CONSTITUTIONAL LAW.—*General Taxation.—Special Assessments.—Judicial Hearings.*—In the collection of taxes for general governmental purposes, the legislature has power to determine the amount to be raised, to decide upon what persons or property it shall be imposed, and to fix a rule for apportioning or assessing such tax against the persons and property subjected thereto, and these matters when determined as a matter of law are binding on the courts, unless the act contravenes some constitutional provision relative to general taxation; but special assessments for local public improvements are levied to pay the costs of the improvements and not to pay general governmental expenses, the theory being that the property affected is increased in value by reason of the improvements, and therefore the power to impose such assessments is limited to the amount of actual benefits to the property, which amount in each particular case is a question of fact susceptible of judicial interpretation.   p. 523.

7. CONSTITUTIONAL LAW.—*Drains.—"Due Process."*—The act of 1911 relative to the repair and cleaning of public ditches, Acts 1911 p. 681, §§6161o, 6161p Burns 1914, is void under the 14th amendment of the federal Constitution as denying due process of law, since the act fails to provide for a notice and hearing on the question of actual benefits whereby the assessments could be adjusted to accord with actual benefits to each tract of land affected by improvements made thereunder.   pp. 539, 540.

From the Miami Circuit Court; *Nott N. Antrim*, Special Judge.

Petition by Thomas E. Bolley and another for the cleaning and repairing of a public ditch to which Jacob J. Harmon and others filed objections. From a judgment ordering the repair of the ditch, the objectors appeal. *Reversed*.

*Robert J. Loveland*, for appellants.
*Albert H. Cole*, for appellees.

LAIRY, J.—Appellees filed their petition in the Miami Circuit Court asking for the cleaning and repair of a public ditch located in the counties of Miami and Wabash and known as the Squirrel Creek Ditch. The proceeding was had under a statute of this state specially providing for proceedings for the repair of public ditches constructed by means of a steam shovel or floating dredge. Acts 1911 p. 681, §§6161o, 6161p Burns 1914.

The petition was by the court referred to the county surveyor of Miami county, with directions to make an examination of the ditch proposed to be cleaned and to report to the court as provided by the first section cited. The surveyor filed a written report in favor of the proposed clean-out, with complete specifications for repairs, whereupon notice by publication for two weeks was given by the clerk of the court, all as provided by the act cited. On the return day fixed in the notice appellants appeared and filed verified objections to the jurisdiction of the court on the ground that the statute hereinbefore cited, which purports to confer jurisdiction on the court to order the repair of ditches in the manner therein provided, is void for the reason that its provisions with reference to the manner in which assessments are to be made conflict with certain provisions

of the state and federal Constitutions. This objection and motion to dismiss the proceedings was overruled, which ruling is assigned as error and presents the first question for consideration on appeal.

The statute under consideration provides for a hearing on the report after notice on which the court shall determine whether such ditch shall be repaired and, in case the finding is in favor of such report, the court shall determine the order and manner in which said ditch shall be cleaned; and after such order has been made the clerk shall let the contract, after giving the notice provided, to the lowest responsible bidder, which contract shall be approved by the court. The costs of such repairs, including the per diem of the county surveyor and printer's fees for the publication of all necessary notices, shall be paid by the persons, corporations, corporate roads and railroads who are the owners of lands or rights of way originally assessed for the cost of construction of said ditch in proportion to their original assessments as levied and made for the construction of said ditch. It is made the duty of the clerk of the court in which such proceeding is had to make a computation of the several assessments to be made and levied for such repair work by distributing the total cost of construction and the other expenses incidental thereto as in this act provided, and to prepare a report of the same, giving the name of the landowner assessed as the same appears on the tax duplicate, a description of his lands, and the amount to be apportioned to said lands, whereupon such report shall be submitted to the court for approval. If the court finds the report to be correct, it shall approve the assessments as made, and fix the time within which the same shall be paid. Under the provisions of the act, all assessments paid to the clerk within the time fixed by the court shall be turned over to the county treasurer for the purpose for

which the same were intended, and it is made the further duty of the clerk to certify all assessments not paid within such time to the county auditor to be placed on the tax duplicate and collected with a penalty of ten per cent. as other taxes are collected.

Appellants' position is that the provisions of the act with reference to the allotment of the costs and expenses of the repairs is in conflict with the provisions of the 14th amendment to the federal Constitution and also of §21, Art. 1, of the Constitution of Indiana. The section of the state Constitution relied on provides that no man's property shall be taken without just compensation, and the 14th amendment of the federal Constitution provides that no state shall deprive any person of life, liberty or property without due process of law. It is the theory of appellants that the statute under which the proceedings were had provide for the apportionment and assessment of the costs and expenses of the repair to the several tracts and parcels of land affected in an arbitrary manner without regard to the real or actual benefits which will accrue to each parcel of land by virtue of the proposed improvement, and that no provision is made by the statute whereby appellants are entitled to a notice or hearing by which the actual benefits to their lands may be determined by any tribunal. If the statute is followed, it is apparent that an assessment will be placed against the lands of appellants which will bear the same ratio to the total costs and expenses of the proposed repairs as the original assessments against said lands bore to the total assessments made for the construction of the ditch originally, and that no provision is made whereby they can challenge the amount of the assessment so made as being in excess of the actual benefits accruing to their lands on account of such repair.

By their verified motion to dismiss the proceeding for

want of jurisdiction, appellants stated that their several tracts of land would not be benefited to any extent by the proposed clean-out, thus showing that any assessment apportioned against such lands would be in excess of the actual benefits accruing thereto.

The question here presented involves a consideration of the power vested in the legislature of the state to authorize the imposition of special assessments 1. to pay the cost of local improvements of a public nature on property affected thereby, in connection with the limitations placed on such power by the constitutional provisions to which we have referred. That such power exists subject to such limitations is settled beyond controversy. *Bemis* v. *Guirl Drainage Co.* (1914), 182 Ind. 36, 105 N. E. 496; *Anderson* v. *Kerns Draining Co.* (1860), 14 Ind. 199, 77 Am. Dec. 63. The difficulty arises in determining the application and effect of the two constitutional provisions under consideration. Do both of such provisions apply to the power of imposing such special assessments? If not, does one of them apply and, if so, which one? The authorities hold with practical unanimity that the provision of the 14th amendment to the federal Constitution forbidding the taking of the private property of a citizen by a state without due process of law applies as a restriction on the power to levy and collect such special assessments; but there is hopeless confusion in the authorities as to the applicability of the provisions of state constitutions similar to ours forbidding the taking of private property for a public use without just compensation. By a number of decisions of this court it is held that the inhibition against the taking of 2. private property for a public use without just compensation as found in §21, Art. 1, of our Constitution applies only to the taking of property under the power of eminent domain whereby some specific

property is taken from the owner and devoted to a public use. *Hanly* v. *Sims* (1910), 175 Ind. 345, 353, 93 N. E. 228, 94 N. E. 401; *State* v. *Richcreek* (1906), 167 Ind. 217, 223, 77 N. E. 1085, 5 L. R. A. (N. S.) 874, 119 Am. St. 491, 10 Ann. Cas. 899; *Board, etc.* v. *State, ex rel.* (1896), 147 Ind. 476, 492, 46 N. E. 908; *City of Aurora* v. *West* (1857), 9 Ind. 74; *Chicago, etc., R. Co.* v. *Village of Elmhurst* (1896), 165 Ill. 148, 154, 46 N. E. 437; *Roberts* v. *Smith* (1897), 115 Mich. 5, 8, 72 N. W. 1091; *Heman* v. *Schulte* (1901), 166 Mo. 409, 419, 66 S. W. 163. In other cases decided by this court, however, this constitutional provision has been invoked and applied as a limitation on the power to make such special assessments where the assessment imposed exceeded the actual special benefits. *Parke Co. Coal Co.* v. *Campbell* (1894), 140 Ind. 28, 35, 39 N. E. 149, 558; *Campbell* v. *Dwiggins* (1882), 83 Ind. 473, 480; *Trimble* v. *McGee* (1887), 112 Ind. 307, 310, 14 N. E. 83. In such cases the two constitutional provisions under consideration have frequently been referred to indiscriminately, the court saying that the enforcement of such assessment as to any excess above the actual benefits to the property affected would constitute the taking of property for a public use without just compensation and without due process of law. The confusion has arisen on account of the failure by the courts, in some cases, to observe any distinction in making the application of the two constitutional provisions under consideration. This distinction may be important in case of conflict between the decisions of the state courts and the federal courts. In determining the meaning and application of provisions of a state Constitution, the Supreme Court of the state has the last word and the federal courts, including the Supreme Court of the United States, will follow the decisions of a state on such questions. *Old Colony Trust Co.* v.

3.

*Omaha* (1912), 230 U. S. 100, 116, 33 Sup. Ct. 967, 57 L. Ed. 1410; *Missouri, etc., R. Co.* v. *Cade* (1913), 233 U. S. 642, 647, 34 Sup. Ct. 678, 58 L. Ed. 1135. On the other hand, the Supreme Court of the United States has the last word when the meaning or application of a provision of the federal Constitution is involved, and the courts of the several states are bound by the decisions of that court on such questions. *Cook* v. *Moffat* (1847), 5 How. 295, 307, 12 L. Ed. 159; *State* v. *Woodward* (1883), 89 Ind. 110, 114, 46 Am. Rep. 160; 6 R. C. L. §82, p. 83.

In considering and applying §21 of Art. 1, *supra,* we must be controlled by decisions of this court and by such reasons as may appear to this court to be sound; but, if we are called on to consider and apply the "due process of law" provision of the federal Constitution, we are controlled by the decisions of the Supreme Court of the United States irrespective of the views of this court. It is evident that the two constitutional provisions under consideration are not identical in their meaning, scope and application. This appears from the fact that both of such provisions are embodied in the 5th amendment to the federal Constitution limiting the powers of the federal government, and from the further fact that, when the 14th amendment was adopted as a limitation on the powers of the states, the inhibition against depriving a citizen of life, liberty or property without due process of law was embodied therein substantially as found in the 5th amendment, while the other provisions of that amendment forbidding the taking of private property for a public use without just compensation was omitted from the 14th amendment.

From what has preceded it will be seen that this court is of the opinion that §21, Art. 1, of our state Constitution can properly be said to apply, only, to the taking of specific property under the power of eminent domain

to be devoted to a public or quasi-public use. If taken for the use of the state, the damages need not be assessed and tendered before the property is taken, but if taken for any other use the damages must be first 2. assessed and tendered. The provisions of this section seem to indicate that the makers of the constitution had in mind the taking of property under the power of eminent domain and that it was not intended to apply to an exercise of the police power of the state or to its taxing power in any of its forms. *Sidener* v. *Norristown, etc., Turnpike Co.* (1864), 23 Ind. 623; *Stone* v. *Fritts* (1907), 169 Ind. 361, 366, 82 N. E. 792, 15 L. R. A. (N. S.) 1147, 14 Ann. Cas. 295; *Hanly* v. *Sims, supra.*

The court is not unmindful of certain language employed by this court in some former decisions to the effect that the enforcement of an assessment against private property in excess of the actual benefits accruing to it by reason of an improvement when imposed under a law making no provisions as to a hearing on the question of actual benefits, is, as to such excess above actual benefits, a taking of private property without just compensation; but, after careful consideration, such expressions are not regarded as deliberate statements of the opinion of the court made after a careful consideration of the meaning and application of §21 of Art. 1 of our state Constitution as compared with that of the "due process of law" provision of the federal Constitution. If a special assessment, under a law making no provision as to a hearing on the question of actual benefits, is in excess of such actual benefits, it may be invalid, but, if so, it is because it conflicts with the "due process of law" provision of the federal Constitution, and for no other reason.

The Supreme Court of the United States has declined to attempt a definition of what amounts to due process

of law, saying: "What constitutes that process it may be difficult to define with precision so as to cover all cases. It is, no doubt, wiser, as stated by Mr. Justice Miller in *Davidson* v. *New Orleans*, to arrive at its meaning 'by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning on which such decisions may be founded.' 96 U. S. 97, 104. It is sufficient to observe here, that by 'due process' is meant one which, following the forms of law, is appropriate to the case, and just to the parties to be affected. It must be pursued in the ordinary mode prescribed by the law; it must be adapted to the end to be attained; and wherever it is necessary for the protection of the parties, it must give them an opportunity to be heard respecting the justice of the judgment sought. The clause in question means, therefore, that there can be no proceeding against life, liberty, or property which may result in the deprivation of either, without the observance of those general rules established in our system of jurisprudence for the security of private rights." *Hagar* v. *Reclamation District* (1883), 111 U. S. 701, 707, 4 Sup. Ct. 663, 667 (28 L. Ed. 569).

It is apparent that this inhibition of the 14th amendment is very broad in its scope and comprehensive in its application. The decisions of the Supreme Court of the United States seem to indicate that the provision applies to every exercise of the governmental power of a state whereby a citizen may be deprived of property in a manner which is not in accordance with the law of the land or with the due course of law. In determining what amounts to due process of law, the nature of the governmental power called into exercise should be considered as well as the result which is to be accomplished by the proceeding; and the method or process adopted should be suited to a proper and efficient

exercise of the governmental power and should be adapted to attain the desired result. It should be just to the parties to be affected and should provide for a notice and hearing when necessary to a just protection of private rights. *Turpin* v. *Lemon* (1902), 187 U. S. 51, 23 Sup. Ct. 20, 47 L. Ed. 70. A notice and hearing are held to be essential to proceedings which involve the life or liberty of a citizen. *Hagar* v. *Reclamation District, supra; Simon* v. *Craft* (1900), 182 U. S. 427, 21 Sup. Ct. 836, 45 L. Ed. 1165; *Japanese Immigrant Case* (1902), 189 U. S. 86, 100, 23 Sup. Ct. 611, 47 L. Ed. 721.

"Due process of law in each particular case means, such an exercise of the powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs." Cooley, Constitutional Limitations (7th ed.) 506. A notice and a hearing of a judicial nature is not essential in all

4. cases to due process of law for the reason that such a proceeding is not ordinarily appropriate to the exercise of the particular governmental power invoked, and is not well adapted to accomplish the result desired. No such procedure is required by the 14th amendment where a state is engaged in the exercise of its police power. *Bartemeyer* v. *Iowa* (1873), 18 Wall. 129, 21 L. Ed. 929. In the case of *Murrays' Lessee* v. *Hoboken Land, etc., Co.* (1855), 18 How. 272, 15 L. Ed. 372, it was held that a notice and hearing of a judicial nature was not essential to due process of law in the enforcement of a balance due from a collector of customs by a distress warrant issued by executive authority prescribed by law.

It is thus seen that due process of law does not, in all cases, require a regular proceeding in a court of

justice or after the manner of such courts. In the exercise of the taxing power for the purpose of raising revenue to defray the expenses of government, due process of law does not require that the property subject to the tax or the amount of tax to be raised shall be determined by a judicial inquiry. It is said: "Taxes have not, as a general rule, in this country since its independence, nor in England before that time, been collected by regular judicial proceedings. The necessities of government, the nature of the duty to be performed, and the customary usages of the people, have established a different procedure, which, in regard to that matter, is, and always has been, due process of law." *Kelly* v. *Pittsburgh* (1881), 104 U. S. 78, 26 L. Ed. 658. "The prompt payment of taxes is always important to the public welfare. It may be vital to the existence of a government. The idea that every taxpayer is entitled to the delays of litigation is unreason." *Springer* v. *United States* (1880), 102 U. S. 586, 26 L. Ed. 253.

What amounts to due process of law must depend to some extent on the power of government which is being exercised and the purpose to be accomplished. The means adopted must be appropriate to the power and suitable to the end to be attained. In the exercise of the power to levy taxes for the support of government, a notice and hearing as to the amount of the tax and the manner in which it shall be apportioned is not generally necessary to due process of law; but, the means which are suitable and adequate in the exercise of such power where special benefits are not involved, would not, necessarily be adapted to reach the desired result where assessments are to be made in accordance with special benefits.

There can be no doubt that special assessments, imposed on property affected by a local improvement of

a public nature to pay the costs and expenses of such improvement, are regarded as a species of taxation; but it is equally true that money so raised does not constitute any part of the general revenue of the state or of any municipality organized for governmental purposes. Such special assessments differ from taxes levied for government revenue in several important particulars. In the purposes for which they are imposed, in the principles upon which they are based, and in the objects for which their proceeds are expended, such assessments are so dissimilar to general taxes as to clearly differentiate the one from the other.

A distinction should be drawn and observed between the power to levy and collect taxes for general governmental purposes and the power to make such special assessments. The power to tax for the purpose of raising revenue to administer the affairs of government is the highest sovereign power. The amount of money which a government has power to raise by taxes for such purposes is limited only by the necessities of the government. The government extends to the citizen the protection of its laws and he enjoys the rights, privileges and immunities of citizenship. One of the highest duties of a citizen is to contribute to the public support of the government under which he lives. Taxes levied for general revenue purposes are not based on the principle of special or peculiar benefit to the individual taxpayer, but are levied for the general benefit and welfare of the nation, state or municipality. Such taxes are not apportioned on the theory that each citizen is specially benefited by the maintenance of the government to the extent of the amount of the tax imposed. The benefits accruing to a taxpayer as a result of living under organized government are of such a nature that they cannot be measured in money, and any attempt to adjust such

taxes in accordance with the actual benefits in fact received by each taxpayer would be impractical, if not absurd. In imposing taxes of this character under the general taxing power there can be no doubt as to the application of the rules announced in the cases to which we have referred. The legislature has power to determine the amount of money to be raised by the tax, to decide upon what persons or property it shall be imposed, and to fix a rule for apportioning or assessing such tax against the persons and property subjected to taxation. These matters when so determined as a matter of law are binding on the taxpayer and the courts, unless the law contravenes some constitutional provision on the subject of general taxation. A statute so framed affords due process of law for imposing a tax for revenue purposes, but it does not follow that similar provisions in a statute providing for special assessments would afford due process of law for fixing such assessments on the property to be affected. As distinguished from taxes for revenue, special assessments are not levied for the purpose of paying the expense of administering the government of any nation, state or municipality; but, for the purpose of paying the cost and expenses of making a local improvement of a public nature. The amount which can be raised by such assessments for such a purpose is limited by the actual benefits which accrue to the property affected thereby. In theory the benefits which accrue to the general public are paid by the municipality in which the improvement is located out of its general revenue raised by taxation, while the property, which is affected and benefited by the improvement in a manner not common to the public, is assessed with the special and peculiar benefits which actually accrue to it as a result of the improvement. The amount so assessed is not regarded as a burden imposed for the support of government; but the

theory on which such assessments are sustained is that the property on which they are imposed is increased in value or otherwise peculiarly benefited to an amount equal to the assessment. It is evident, therefore, that the power to impose special assessments should be limited to the amount of actual benefits accruing to the property affected by the improvement. The amount of actual benefit which will accrue to any particular piece of property by reason of an improvement is a fact which must be determined from the circumstances of each particular case. There may be room for controversy as to the amount of such actual benefits, and the amount in each particular case is susceptible of proof and judicial determination.

In considering the due process of law provision of the 14th amendment in connection with statutes providing for imposing special assessments as a test of the validity of such statutes, the courts, including the Supreme Court of the United States, have generally applied the same tests that are resorted to in determining the validity of statutes on the subject of general taxation. In the case of *French* v. *Barber Asphalt Pav. Co.* (1900), 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879, it was decided that special assessments to pay the cost of a local improvement are a species of taxation and that the rule that no judicial hearing as to the amount of such assessments or as to the property against which they shall be assessed is essential to constitute due process of law. The decision in that case attempts to distinguish the case of *Norwood* v. *Baker* (1898), 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443, wherein it was announced that the principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and that, therefore, the owners do not in fact pay anything in excess of what they receive by reason

of such improvements. The court said: "In our judgment, the exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, *to the extent of such excess,* a taking, under the guise of taxation, of private property for public use without compensation."

The rule announced in the case of *Norwood* v. *Baker, supra,* seemed to be a departure from the rule announced in the earlier cases decided on the subject by the Supreme Court of the United States, but the rule in that case has not been consistently followed. Most of the later cases on the subject follow the rule announced in *Spencer* v. *Merchant* (1887), 125 U. S. 345, 8 Sup. Ct. 921, 31 L. Ed. 763, and other earlier decisions by that court. By that rule the legislature has the power to determine the amount of the tax to be raised, the property to be benefited by local improvement, and to fix a rule by which the apportionment shall be made to the several pieces of property affected, as by the front foot, according to area or according to value. These decisions proceed upon the assumption that all such assessments must be based on actual benefits accruing to the property affected, but they hold that the legislature has power to determine as a fact that certain property will be benefited by an improvement and that each parcel of the property affected will be actually benefited to an amount to be ascertained by the application of the rule fixed, whether that be in proportion to frontage, area, or value. These facts being the subject of legislative determination, it is held that such a determination is binding on the property owner and the courts. In the case last cited, the court said, "The question of special benefit and the property to which it extends is of necessity a question of fact, and when the legislature determines it in a case within its general power, its

decision must of course be final. We can see in the determination reached possible sources of error and perhaps even injustice, but we are not at liberty to say that the tax on the property covered by the law of 1881 was imposed without reference to special benefits. The legislature practically determined that the lands described in that act were peculiarly benefited by the improvement to a certain specified amount which constituted a just proportion of the whole cost and expense; and while it may be that the process by which the result was reached was not the best attainable, and some other might have been more accurate and just, we cannot for that reason question an enactment within the general legislative power. * * * The precise wrong of which complaint is made appears to be that the landowners now assessed never had opportunity to be heard as to the original apportionment, and find themselves now practically bound by it as between their lots and those of the owners who paid. But that objection becomes a criticism upon the action of the legislature and the process by which it determined the amount to be raised and the property to be assessed. Unless by special permission, that is a hearing never granted in the process of taxation. The legislature determines expenditures and amounts to be raised for their payment, the whole discussion and all questions of prudence and propriety and justice being confided to its jurisdiction. It may err, but the courts cannot review its discretion."

It is thus seen that no distinction is observed between taxes levied and collected for general revenue and special assessments made for local improvements, it being held that the legislature has the same power and may pursue the same methods in imposing such special assessments as in imposing taxes for general revenue purposes, and that by so doing it does not violate the "due process of law" provision of the 14th amendment.

While this court recognizes the obligation resting on it to follow the decisions of the Supreme Court of the United States in the construction and application of the 14th amendment to the federal Constitution, it finds difficulty in reconciling the decisions since the case of *Norwood* v. *Baker, supra.* Prior to that time the decisions of the United States Supreme Court were consistent in holding that the legislative branch of government had power, in its discretion, to declare *as a matter of law* that certain property described either as abutting property or as located within an assessment district would be specially benefited by a local improvement to the extent of the entire cost of such improvement, and that each parcel of land affected would be specially benefited to an amount to be determined by the application of a standard or rule of apportionment which the legislature had power to fix. *County of Mobile* v. *Kimball* (1880), 102 U. S. 691, 703, 26 L. Ed. 238; *Spencer* v. *Merchant, supra.*

In applying such laws and in making assessments under them in accordance with the standard or rule of apportionment fixed, the real benefit resulting to separate tracts, *as a matter of fact,* was not considered. The legislature was regarded as having power to determine the amount of special benefits and to apportion them to the several tracts of land affected *as a matter of law;* and such law, whether just or unjust in its application, was regarded as binding on property owners and on the courts. It was uniformly held that such statutes afforded due process of law to the property owner for ascertaining and fixing the special assessments against his property and that they were not violative of the 14th amendment in that regard. *County of Mobile* v. *Kimball, supra; Spencer* v. *Merchant, supra; Parsons* v. *District of Columbia* (1897), 170 U. S. 45, 18 Sup. Ct.

521, 42 L. Ed. 943; *Mattingly* v. *District of Columbia* (1878), 97 U. S. 687, 24 L. Ed. 1098.

The trend of judicial opinion in this state prior to the decision in the Norwood case, *supra*, was in accord with the rule adopted and announced in those decisions. *Snyder* v. *President, etc., of Rockport* (1855), 6 Ind. 237; *Goodrich* v. *Winchester, etc., Turnpike Co.* (1866), 26 Ind. 119; *Ray* v. *City of Jeffersonville* (1883), 90 Ind. 567; *Ross* v. *Stackhouse* (1887), 114 Ind. 200, 16 N. E. 501; *Garvin* v. *Daussman* (1887), 114 Ind. 429, 16 N. E. 826, 5 Am. St. 637; *Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455, 25 N. E. 436; *City of Terre Haute* v. *Mack* (1894), 139 Ind. 99, 38 N. E. 468.

In the Norwood case the Supreme Court of the United States held that assessments made against property to pay for local improvements of a public nature must be based on the actual benefits which *as a matter of fact* accrue to such property as a result of such improvement, and that any assessment made in excess of benefits which in fact accrue to such property is as to such excess void. After the decision in that case this court adopted the rule there announced and has adhered to it to the present time. *Adams* v. *City of Shelbyville* (1899), 154 Ind. 467, 57 N. E. 114, 77 Am. St. 484, 49 L. R. A. 797; *Parke Co. Coal Co.* v. *Campbell, supra; Watson* v. *Armstrong* (1913), 180 Ind. 49, 102 N. E. 273; *Williams* v. *Osborne* (1913), 181 Ind. 670, 104 N. E. 27.

The rule announced by the court in the Norwood case, *supra*, seems to be so directly at variance with the rule formerly followed by that court as to amount to an entirely new and different construction and application of the "due process of law" provision of the 14th

amendment in relation to special assessments. The difference between the two rules was recognized in the opinion of this court in the case of *Adams* v. *City of Shelbyville, supra,* and the distinction was clearly pointed out by Justice Baker in the dissenting opinion wherein it is said: "The federal Constitution is not what the citizen may read it to be, but is what the Supreme Court of the United States declares it to be. I concur in the statement that, prior to the *Norwood* v. *Baker* decision, 172 U. S. 269, 19 Sup. Ct. 187, 42 L. Ed. 443, the method stated in §752 of Dillon was constitutional, that is, that the legislature in its discretion might declare *as a matter of law* that the whole cost of a street improvement and the special benefits to abutting property equaled each other, and that the cost should be apportioned according to frontage, and that the property owners were entitled to a hearing before a tribunal authorized to review the assessment and see that it justly conformed to the *frontage basis.* For brevity, I shall call this the 'old' constitution. I concur in the statement that, since the Norwood-Baker decision, the method stated in §752 of Dillon is unconstitutional, and that nothing short of the method stated in §761 of Dillon is constitutional, that is, that the legislature must provide a method by which the special benefits to contributing property shall be determined *as a question of fact,* and that the excess of cost above the sum of special benefits is a general benefit to be paid for from the general treasury, and that property owners are entitled to a hearing before a tribunal authorized to review the assessment and see that it justly conforms to the basis of benefits in fact received. For brevity, I shall call this the 'new' constitution. The text-books and reports are full of the general statement that 'the only basis for special assessments is special benefits.' Concerning this proposition there has never been any disagreement,

so far as I have been able to learn. But from this common starting point, two very dissimilar lines of thought have been followed. In one, it was said: 'Special benefits are the only legitimate basis for special assessments, but the legislature may declare as a matter of law that the property owner's special benefits are exactly equal to his special assessment by frontage.' In the other, it was said: 'Special benefits are the only legitimate basis for special assessments, but the property owner may not be specially assessed beyond his special benefits found as a matter of fact.' So, finding in reported cases the expression that special benefits are the only legitimate basis for special assessments does not of itself show which theory a court has adopted. It is hardly conceivable that a court would be following out the two theories at the same time. They seem as far apart as the poles, as essentially different as a question of law is from a question of fact." While the foregoing quotation is couched in very strong language, it is clear that the point is well made. If the thing to be determined is the amount to be contributed by each tract of land benefited, to be ascertained by an apportionment according to some fixed standard or rule, this can be done by a legislative declaration of law on the subject; but, if the result to be reached is the ascertainment of the special benefit which will in fact accrue to each particular tract, this can be determined only from a consideration of evidence showing the location, the extent, the value and other characteristics of the tracts to be assessed as well as the nature of the improvement and its effect on the value and usefulness of the property. The peculiar benefits which will, in fact, accrue to any particular tract of land as a result of an improvement can be determined only by a judicial inquiry involving a notice, a hearing, the consideration of evidence and the decision of a question of fact. Such a

proceeding is judicial in its nature.   *Hagar* v. *Reclama-tion District, supra.*   It must therefore follow that, if the end to be attained in making special assessments is to apportion and fix them on the several tracts of land affected in *accordance* with the peculiar benefits which each in fact receives, this result can be reached only by a judicial investigation, and that due process of law cannot be afforded by a statute making no provision for a judicial hearing as to the benefits in fact received by the property affected, but providing for the apportion-ment of the entire cost in accordance with a fixed rule or standard established by the legislature.   In the case last cited the court, speaking on this subject through Justice Field, said:   "The appellant contends that this fundamental principle was violated in the assessment of his property, inasmuch as it was made without notice to him, or without his being afforded any opportunity to be heard respecting it, the law authorizing it contain-ing no provision for such notice or hearing.   His con-tention is that notice and opportunity to be heard are essential to render any proceeding due process of law which may lead to the deprivation of life, liberty, or property.   Undoubtedly where life and liberty are in-volved, due process requires that there be a regular course of judicial proceedings, which imply that the party to be affected shall have notice and an opportunity to be heard; so, also, where title or possession of prop-erty is involved.   But where the taking of property is in the enforcement of a tax, the proceeding is neces-sarily less formal, and whether notice to him is at all necessary may depend upon the character of the tax, and the manner in which its amount is determinable. * * * Of the different kinds of taxes which the State may impose, there is a vast number of which, from their nature, no notice can be given to the taxpayer, nor would notice be of any possible advantage to him, such as poll

taxes, license taxes (not dependent upon the extent of his business), and generally, specific taxes on things, or persons, or occupations. In such cases the legislature, in authorizing the tax, fixes its amount, and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold, and he be thus deprived of his property. Yet there can be no question, that the proceeding is due process of law, as there is no inquiry into the weight of evidence, or other element of a judicial nature, and nothing could be changed by hearing the taxpayer. No right of his is, therefore, invaded."

The converse of the propositions stated in the extract just quoted from the opinion may be stated thus: If the result to be attained involves the determination of facts from a consideration of evidence, and if the result could be changed by a hearing in case provision were made for notice and an opportunity to be heard, the substantial rights of the party affected would be involved by a failure of the statute to provide for such hearing. The only inference which could follow is that a statute making no provision for a hearing as to such traversable facts would fail to afford due process of law. It is clear that the converse of the proposition would apply to a statute authorizing special assessments based on the benefits which are in fact received by property benefited by a local improvement. The rule recognizing the right of the legislative branch of government to fix a standard by which special benefits shall be apportioned to property affected by a local improvement does not respect any right of a property owner to be heard as to benefits which will in fact accrue to his property. In fixing the rule by which such apportionment shall be made, the legislature, without doubt, would attempt to adopt a method which, as a general rule, would result in an apportionment of the cost of the improvement *ap-*

*proximately* in accordance with the actual special benefits to be received by each parcel of land affected. The application of such a rule results in the fixing of assessments which may, in the cases to which it ordinarily applies, *approximate* the benefits to be received by the property, but that is the most that could be accomplished by such a rule. There is no means by which such assessment can be made to correspond with actual benefits. Even in such cases, the resulting assessments would vary from the actual benefits received to a greater or less degree; and, some cases may arise in which the assessment resulting will be grossly in excess of actual benefits.

If this method of fixing assessments affords due process of law, the assessments made in accordance therewith must be valid and enforceable even though they exceed the benefits in fact accruing to the property assessed, and this must be true whether such excess be great or small. On the other hand, if such method of apportioning assessments to property affected does not afford due process of law, and resulting deprivation of property, however small, would be a violation of the 14th amendment, for a state has no more power under that amendment to deprive a citizen of property without due process of law where the amount is small than it has to do so where the amount is great.

If followed to its legitimate results, the rule established in the Norwood case, *supra*, is inconsistent with the rule previously followed by the Supreme Court of the United States in similar cases, as was pointed out in a dissenting opinion filed in the case of *French* v. *Barber Asphalt Pav. Co.*, *supra*, by Justice Harlan, with whom concurred Justice White and Justice McKenna. The two rules are incompatible; the courts cannot consistently follow both; one or the other must prevail. If the legislative branch of government has power to establish an

arbitrary rule for apportioning the cost of a local improvement to the several tracts of land, and if such legislative act is held to afford due process of law, then all assessments made in accordance with the standard so established are valid even though grossly in excess of actual benefits; but, if such a method of fixing assessments for special benefits does not afford due process of law, then all assessments so fixed are void.

As before stated, the Supreme Court of the United States has in most cases followed the old rule as announced in *Spencer* v. *Merchant, supra; French* v. *Barber Asphalt Pav. Co., supra; Tonawanda* v. *Lyon* (1900), 181 U. S. 389, 21 Sup. Ct. 625, 45 L. Ed. 879; *Wagner* v. *Baltimore* (1915), 239 U. S. 207, 36 Sup. Ct. 66, 60 L. Ed. 230; *Houck* v. *Little River District* (1915), 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266; *Embree* v. *Kansas City, etc., Road District* (1915), 240 U. S. 242, 36 Sup. Ct. 317, 60 L. Ed. 624. That rule is not followed, however, where it appears that the application of the fixed standard of apportionment under the facts of the particular case will result in assessments which would be substantially in excess of actual benefits, or which would be manifestly unequal or unjust. *Gast Realty, etc., Co.* v. *Schneider Granite Co.* (1915), 240 U. S. 55, 36 Sup. Ct. 254, 60 L. Ed. 523; *Martin* v. *District of Columbia* (1906), 205 U. S. 135, 27 Sup. Ct. 440, 51 L. Ed. 743. Speaking on that subject in *Wagner* v. *Baltimore, supra,* the court said: "We do not understand this to mean that there may not be cases of such flagrant abuse of legislative power as would warrant the intervention of a court of equity to protect the constitutional right of landowners, because of arbitrary and wholly unwarranted legislative action." In the case of *Houck* v. *Little River District, supra,* it is said, "The State in its discretion may lay such assessments in proportion to position, frontage, area, market value,

or to benefits estimated by commissioners. * * *
And, as we have said, unless the exaction is a flagrant
abuse, and by reason of its arbitrary character is mere
confiscation of particular property, it cannot be main-
tained that the State has exceeded its taxing power."
Such expressions seem to indicate that the validity of
such laws is to be tested by the court's judgment as to
their reasonableness and justness, and that the court
should declare such a statute void if, in its opinion, the
legislature has abused its power by adopting a standard
of apportionment which in its application proves to be
unreasonable or unjust.

Such standards are always absolute and unchanging
and are not adaptable to varying conditions. Under
some conditions arising the application of such a rule
may result in assessments which are approximately in
accordance with actual benefits, but the standard ap-
plied under other conditions may result in assessments
which are so unjust and inequitable as to amount to
a practical confiscation of property. If assessments re-
sult which are unjust or which are substantially in ex-
cess of actual benefits, it is because of a defect in the
law under which they are apportioned in making no pro-
vision for a hearing in which they may be adjusted to
conform to actual benefits. If such a defect renders the
law void, it is not so because the law is unjust or un-
reasonable or because it is the result of an abuse of leg-
islative power, but it is void because it violates the
"due process of law" provision of the federal Constitu-
tion. Is it conceivable that a statute or ordinance pro-
viding a given standard of apportionment could be held
to be constitutional as applied to one state of facts and
unconstitutional as applied to a different state of facts?
If the legislature has power to fix an unvarying rule of
apportionment, such power involves the right to de-
termine what rule will result in assessments most nearly

in accordance with actual benefits in the generality of cases to which it applies. In such case the justness and reasonableness of the rule would be the subject of legislative declaration and its decision would be binding. The court would have no power to overthrow the statute because the standard of apportionment was unjust, unreasonable, or arbitrary, because that would be to substitute the judgment of the court as to such questions for that of the legislature. The law was stated in *Spencer* v. *Merchant, supra,* 353, where it is said: "The legislature practically determined that the lands described in that act were peculiarly benefited by the improvement to a certain specified amount which constituted a just proportion of the whole cost and expense; and while it may be that the process by which the result was reached was not the best attainable, and some other might have been more accurate and just, we cannot for that reason question an enactment within the general legislative power."

If the rule thus stated is the true rule, it should be consistently followed. Such a course would require the courts to uphold all rules of apportionment adopted by a legislature, for, by adopting such rule, that body determines that it is reasonable and that its application will result in assessments reasonably approximating actual benefits in the general run of cases to which it will apply. Under such a rule the courts could not set aside any rule of apportionment established by the legislative branch of government on the ground that such rule was arbitrary and unjust. To decide that a rule is arbitrary is to hold that it is not based on reason, whereas, under the rule stated, the reasonableness and adaptability of the rule would be set at rest by legislative determination. If such rule is adhered to, a statute fixing an absolute rule for apportioning assessments could not be overthrown by the courts because it

is not well adapted to accomplish the results intended when applied in a particular case. If it affords due process of law, it is not violative of that provision of the federal Constitution even though the court may believe that the rule of apportionment fixed is unreasonable, and that, as applied to facts and conditions shown in the case before the court, it operates so as to produce a gross injustice.

Such rules of apportionment are always fixed according to some ratio, and, where no provision is made for a judicial inquiry as to actual benefits, they are invariable and unchangeable. If the result to be reached is the fixing of assessments in accordance with actual benefits, and if such rules are well adapted to reach that end, they afford due process of law and should be universally upheld. On the other hand, if such rules are not well adapted to reach that end; if their application, at best, results in assessments which are to some degree disproportioned to actual benefits, and sometimes work a gross injustice; if a judicial determination after notice and the hearing of evidence is more likely to result in fixing assessments in accordance with actual benefits; if that course is better adapted to protect the rights of the citizen and is more suitable to the administration of justice according to the forms of law usually recognized and adopted in the settlement of such questions— then due process of law requires that a judicial determination after notice and hearing should be provided for. *Hagar* v. *Reclamation District, supra; Davidson* v. *New Orleans* (1877), 96 U. S. 97, 24 L. Ed. 616.

This court is of the opinion that a judicial inquiry is a means well suited and adapted to fixing assessments in accordance with actual benefits, and that no fixed and invariable standard of apportionment is or can be well adapted to that end, and that all such standards which make no provision for the adjustment of such assess-

ments by judicial investigation should be condemned as unconstitutional for the reason that they do not provide for due process of law. In view of the apparently conflicting rules announced by the Supreme Court of the United States, we feel free to follow the ruling in the case of *Norwood* v. *Baker, supra.* If the reasons which have led to this conclusion are fallacious, the error to which they have led may be corrected by the Supreme Court of the United States on appeal.

The law under consideration provides that the entire cost of the repairs of ditches to which it applies shall be imposed on the lands assessed for its construction.

7. tion. Under this rule lands which were not assessed for the original construction of the ditch, but which find outlet through it by means of connecting drains subsequently constructed, could not be assessed to pay any part of the cost of repair although they might be largely benefited thereby. It appears from the objections filed that a large part of the fill which makes the repairs necessary is located on certain lands through which the ditch runs, and that such fill was caused by the stock of the owners of those lands in tramping the adjacent soil into the ditch and thus destroying the banks. It is stated that the removal of the fill thus caused will constitute a large part of the cost of the proposed repair. Some of the objectors state that the drainage from their lands finds an outlet into the ditch at a point below the portion so filled, and that the fill to be removed was not caused by sediment washed in by their drainage and that its removal will not afford them any better outlet for their drainage than they now have. Under the rule of apportionment adopted by the law, these facts could not be considered in fixing the assessments. The act under which the ditch in question was constructed provided that, when a public ditch is located wholly or in part in the bed of a

private ditch already or partially constructed, the view-ers should make an estimate of the number of cubic yards of earth already excavated, and cost of the same, on each tract of land, and deduct the same from the assessment thereon. The objectors allege that in making the assessments for the construction of the ditch the viewers, in obedience to the statute, made deductions from the estimated benefits to numerous tracts of land affected on account of existing private drains which were utilized, and that the assessment against lands, as shown by the record of that proceeding, represents the actual benefits less such deductions. It thus appears that the original assessments against such tracts of land were not in accordance with the actual benefits received from the construction of the ditch, and that an apportionment of the cost of repairing such ditch to the several tracts of land originally assessed in proportion to such original assessment would not result in fair and just assessments in accordance with the benefits. Such rule of apportionment is unreasonable and unjust as applied to the facts shown, but the law is not void for that reason. It is void because it does not afford

7. due process of law for the protection of the rights of the landowner by providing for a notice and hearing on the question of actual benefits, whereby the assessments could be adjusted to accord with actual benefits accruing to each tract of land affected. For the reasons stated, any assessment levied under the provisions of the statute under consideration would be void, and the enforced payment of any money on account of such assessments would constitute a deprivation of the property of a citizen by the state without due process of law within the meaning of the 14th amendment of the federal Constitution.

As no valid assessments can be made or collected under the provisions of the statute, the whole act fails

MAY TERM, 1918. 541

of its purpose, for no money could be raised under its provisions to pay the costs and expenses of repairing a ditch. The purpose of the act was to provide for a special proceeding for the repair of the class of ditches described therein. The circuit courts of the state have no general jurisdiction of the subject-matter of the repair of drains, and the act in question purported to confer jurisdiction of such special proceedings on such courts. The act being void, the court had no jurisdiction to proceed thereunder. The court should have sustained the motion to dismiss upon its attention being called to the invalidity of the act.

Judgment reversed, with instructions to sustain appellants' motion to dismiss the proceeding.

NOTE.—Reported in 120 N. E. 33. Eminent domain, application to drainage, 102 Am. St. 832. See under (2) 15 Cyc 559, 562; (3) 15 C. J. 931; (4) 12 C. J. 1197; (5) 12 C. J. 1255.